*412
 
 Robinson, J.
 

 This case under the above title comes into this court upon a petition in error from the Public Utilities Commission, where several eases were consolidated.
 

 Without attempting to analyze the motives which impelled action by the various complainants before the Commission, or to reconcile the conflict which exists in the evidence as to various issues which are not essential to the decision of this case, it is sufficient to say that the evidence is undisputed that prior to the 28th day of April, 1923, Carl J. Westhoven entered into a partnership with Florence Westhoven, Luella Westhoven, and Louis C. Ivretz, and that on that date the partnership operated a bus line between the city of Toledo and the city of Napoleon, known as “the River Road Bus Line,” and as such partnership continued the operation until some time in the month of July; that thereafter Carl J. Westhoven filed an affidavit with the Public Utilities Commission, stating that “he is the manager of the River Road Bus Line; * * * that on April 28, 1923, said motor transportation company was operating in good faith * *
 
 *
 
 with the following physical property * * *. 'Said Carl J. Westhoven as such motor transportation company therefore respectfully requests the issuance to it of a certificate of public convenience and necessity in accordance with Section 614-87, G-. C.,” which affidavit the Public Utilities Commission found to be true, and issued a certificate, not to the partnership, but to Carl J. Westhoven, to operate over the route described in the affidavit. Thereafter the proceedings from which error is prosecuted here were begun by the
 
 *413
 
 filing of separate complaints- by Albert E. Stewart, Louis 'C. Kretz, and. Florence Westhoven. Louis C, Kretz and Florence Westhoven complain that the issuing of the certificate to Carl J. Westhoven was obtained by him upon a false affidavit, and was a fraud upon the rights of the other copartners. The complaint of Albert E. Stewart was to the effect that Carl J. Westhoven “is not now and has not been the owner of any motor vehicle whatsoever, nor is he the operator, lessee, manager, or controller of the same; that he discontinued operating as a motor transportation company on or about the 10th day of March, 1924; and that he has failed for five months last past to so operate without the consent or approval of your Commission.”
 

 The order of the Commission recites:
 

 “The Commission, being fully advised in the premises, finds from the testimony offered by the witnesses and the admission of Carl J. Westhoven: That on April 28, 1923, the date upon which the Collister-Freeman Bill was filed in the office of the secretary of state, a partnership, consisting of Carl J. Westhoven, Florence Westhoven, Luella Westhoven, and Louis C. Kretz, was operating a motor transportation company, carrying passengers as a common carrier, upon and over a regular route, whereof the city of Toledo and the city of Napoleon, Ohio, were the termini; that neither •Carl J. Westhoven, as an individual, nor the partnership consisting of Carl J. Westhoven and Lawrence Westhoven, were operating a motor transportation company, carrying passengers as a common carrier, between said termini on said April 28,
 
 *414
 
 1923; that the statements contained in the affidavit, heretofore filed with this Commission by the said Carl J. Westhoven, to the effect that the partnership consisting of Carl J. Westhoven and Lawrence Westhoven were operating a motor transportation company, carrying passengers- as a common carrier between said termini on April 28, 1923, are untrue and that certificate of public convenience and necessity No. 101, which was issued upon the said statements set forth in the said affidavit of the said Carl J. Westhoven, has been: obtained by false statements and upon, misrepresentations, and, the 'Commission having been misled by the said affidavit of the said Carl J. Westhoven, hereby further finds that said certificate of public convenience and necessity No. 101 should be and the same hereby is revoked, canceled, annulled, and held for naught.”
 

 In the decision of this case we do not deem it necessary to consider any of the questions raised or attempted to be raised othqr than the status of Carl J. Westhoven at the time the complaints were filed with the Public Utilities Commission and the reasonableness and lawfulness of the order of the Commission revoking his certificate.
 

 That it was the intention of the Legislature, in the enactment of the Freeman-Collister Act, 110 Ohio Laws, 211, to make the certificate of convenience and necessity of the Public Utilities Commission personal to the “person or persons, firm or firms, co-partnership, or voluntary association, joint stock association, company or corporation,” seems apparent from the various provisions of the act, not only by reason of the fact that no pro
 
 *415
 
 vision is made therein for the assignment or transfer of the certificate, but by the various provisions requiring persons who operate or seek to operate in a representative capacity to first secure such a certificate from the Public Utilities Commission. By Section 614-84 “lessees, trustees, receivers or trustees appointed by any court whatsoever,” are made motor transportation companies. By Section 614-85 “lessees, trustees, receivers or trustees appointed by any court whatsoever” are prohibited from operating as motor transportation companies except in accordance with the provisions of the act, among the provisions of the act being that no motor transportation company shall operate without a certificate of public convenience and necessity. Section 614-88 provides that “lessees, trustees, receivers or trustees appointed by any court” shall not operate without such certificate, and Section '614-87, relative to revocation of such certificate, provides for notice “to the grantee of any certificate,” but no provision is made there, or elsewhere in the act, for notice to any person other than the grantee of the certificate, indicating that it was within the contemplation of the Legislature that there would be no person whose rights would be affected by the revocation of the certificate other than the grantee in such .certificate.
 

 The Public Utilities Commission, therefore, was justified in this case in holding that the certificate to Carl J. Westhoven was not a certificate to the partnership of Carl J. Westhoven, Florence Westhoven, Luella Westhoven. and Louis C. Kretz, and that on April 28, 1923, C'arl J. Westhoven, under the admitted facts, was not operating either as
 
 *416
 
 an individual or as a partnership composed of Carl J. Westhoven and Lawrence Westhoven.
 

 The certificate, therefore, whether obtained by misrepresentation or by mistake, was not a certificate to the party or parties entitled to such certificate, under the facts actually existing’, and the order revoking’ such certificate was therefore neither unreasonable nor unlawful.
 

 The provision of Section 614-87, relating to motor transportation companies actually in operation upon the date of the filing of the act in the office of the secretary of state (April 28, 1923), gives to such motor transportation companies no rights different from the rights of holders of certificates who were not so operating, except in the manner of obtaining such certificate. It necessarily follows that the right to a certificate under the prior operation clause is no more the subject of succession or transfer than the certificate itself would be. Indeed, were the Public Utilities Commission to except partnerships from the general rule, and allow the operations of the partnership to inure to the sole benefit of an individual member of the partnership, or the operations of an individual, as such, to inure to the benefit of a partnership of which he may become a part, then the rule of nontransferability of the certificate could be circumvented in every case by the process of the holder of the certificate taking the intended purchaser into partnership and then himself withdrawing from the partnership.
 

 The rule fairly administered can work no injustice, since the Public Utilities Commission has the power to grant a certificate of public conven
 
 *417
 
 ience and necessity upon application in all proper cases, even though it refuse the certificate upon affidavit.
 

 The order of the Public Utilities Commission is therefore affirmed.
 

 Order affirmed.
 

 Marshall, C. J., Jones, Matthias, Day, Allen and Kinkade, JJ., concur.