Robinson, J.
 

 On July 18, 1924, the Public Utilities Commission made a finding of fact and order in this case, which is as follows:
 

 “The Red Ball Transit Company filed an affidavit with the Commission stating that it was a motor transportation company and that on April 28, 1923, it was operating in good faith as such motor transportation company over no fixed routes. No protest having been filed, the Commission, on
 
 *463
 
 February 14, 1924, under Section 614-87, made an order granting a certificate of- convenience and necessity to such company, the company was notified to pay the lawful fees and to file with the Commission the proper tariffs and schedules and insurance policies.
 

 ‘ ‘ On April 11, 1924, the Commission served notice on the company that it must show cause within five days why the certificate heretofore granted should not be canceled for failure on the part of the company to pay the proper tax and for failure to file with the Commission proper tariffs,, schedules, and insurance policies. -2
 

 “Whereupon a hearing was held by the Commission on April 30, 1924, and during the hearing a charge was made that the allegations of the company in its original affidavit were untrue, in that the company was not operating on April '28, 1923, and that the company did not operate a motor transportation company. After the conclusion of the hearing on April 30th, the company asked for another hearing when it would be given an opportunity to present further evidence. The request of the company was granted, and a further hearing was held on the 19th day of May, 1924.
 

 “The evidence produced before the Commission disclosed the fact that an individual, W. B. Hiner, conducted a business known as the Bed Ball Transit, which consisted of selling trucks to individuals and contracting with individuals for the transportation of household goods and other commodities from one place to another; that the business was not confined alone to the state of Ohio, but extended into other states; that said Hiner
 
 *464
 
 would sell a certain type of truck to an individual on time, and then contract with, that individual to haul the goods which said Hiner had agreed to transport from place to place; that the individual who purchased the trucks operated the same, paid all expenses incident to their operation, and received a stipulated amount from Hiner for moving the goods; that Hiner did not move any goods in any trucks owned by him; that on or about (and the testimony is confusing in this respect) April 28,1924 [1923], Hiner and others formed a corporation in the state of Indiana, calling it the Red Ball Transit Company, to conduct the same business that had been carried on by the said Hiner; and that the said Hiner transferred to said company all the assets of the business which he had been carrying on as an individual, and that the said Hiner was the principal stockholder in the corporation.
 

 “The evidence further disclosed the fact that the corporation did not comply with the laws of Ohio regarding a foreign corporation doing business in Ohio until some time in June, 1923.
 

 “The questions before the Commission are: Was the Red Ball Transit Company a corporation operating a motor transportation business as defined in the Collister-Freeman Act, and was it so actually operating in good faith upon the date of ■filing of the Collister-Freeman Act in the office of the secretary of state, to wit, April 28, 1923, so as to entitle it to a certificate of public convenience and necessity upon an affidavit as provided for in the last sentence of 'Section 614-87 of the General Code? The question of whether the
 
 *465
 
 Red Ball Transit Company, a corporation, should be granted a certificate on an application is not now before the 'Commission, neither are the questions of whether or not Hiner,- an individual, is entitled to a certificate or whether or not the truck owners who were doing the actual hauling are entitled to a certificate, for such application and affidavits have not been filed with the Commission.
 

 “Section 614-84 of the General Code defines a motor transportation company as ‘owning, controlling, operating, or managing any motor propelled vehicle not usually operated on or over rails, used in the business of transportation of persons or property, or both, as a common carrier for compensation over any public highway in this state.’ The Commission finds from the evidence that the Red Ball Transit Company was not conducting nor operating such a business; that it did not own, control, operate, or manage any motor propelled vehicle; that it simply entered into a contract with a shipper for the transfer of his goods from one place to another and then hired some one else to do the actual transferring; that these individual owners of the trucks were the ones who owned, controlled, operated, and managed the trucks; that the transit company was simply a broker or forwarder, and did not own, control, operate, or manage the trucks any more than it would own, control, operate, or manage a railroad, if instead of hiring these truckmen to transfer the goods it had shipped the goods over a railroad.
 

 “The Commission further finds that the Red Ball Transit Company, a corporation, was not actually operating in good faith on April '28, 1923,
 
 *466
 
 in the state of Ohio, inasmuch as it is- a foreign corporation and did not comply with the laws of the state of Ohio respecting foreign corporations doing business in Ohio until June, 1923.
 

 “For the reasons set out above the Commission finds that the allegations contained in the affidavit filed by the company are untrue; that the certificate heretofore ordered to be granted to company was obtained through misrepresentation and false statements, and should therefore be revoked.
 

 “It is therefore ordered that the certificate of public convenience and necessity to' operate a mot- or transportation company, transporting property as a common carrier, granted to the Red Ball Transit Company, a corporation, by the order of this Commission, made and entered as of date February 14th, 1924, be, and hereby the said certificate is revoked, canceled, and held for naught.”
 

 Error is prosecuted here by the Red Ball Transit Company to reverse that order.
 

 The question of the applicability of the FreemanCollister Act to the operations of the plaintiff in error, and the question of the right of the state to prohibit the interstate activities of plaintiff in error, are attempted to be raised, an answer to neither of which is necessary, as we view it, to the determination of this case.
 

 In the case of
 
 Westhoven
 
 v.
 
 Public Utilities Comm
 
 ission, 112 Ohio St., 411, 147 N. E., 759, this court held that the operation of a partnership prior to the 28th day of April, 1923, cannot inure to the benefit of the individual members of the partnership, so as to entitle them, as individuals, to a
 
 *467
 
 certificate of convenience and necessity, as a matter of right, upon the filing of an affidavit; that the operation of an individual prior to that date cannot inure to the benefit of the partnership, as such; and that the certificate of convenience and necessity is personal and not transferable. By analogy the operation of an individual, as such, prior to the 28th day of April, 1923, cannot inure to the benefit of a corporation so as to entitle it to a certificate, as a matter of right, even though the stock of the corporation be substantially owned by the person who had theretofore operated as an individual.
 

 Upon the evidence in this case the plaintiff in error was not entitled to receive a certificate of convenience and necessity as a- matter of right, upon affidavit, and since he was not entitled to receive such certificate, the Public Utilities Commission was acting wholly within its powers when it revoked such order.
 

 The order of the Commission is. affirmed.
 

 Order affirmed.
 

 Jones, Matthias, Allen and Kinkade, JJ., concur.