Allen, J.
 

 Two questions are raised upon this record: (1) Whether Sections 614-84 and 614-86, General Code, as amended in 1925, are unconstitutional; and (2) whether Sections 614-84 and 614-86, General Code, as amended in 1925, if constitutional, and the ordinance in question apply to the operation of the plaintiff in error, which secured certificates of convenience and necessity upon affidavit of operation prior to April 28, 1923, before the amendment of such sections in 1925. We shall consider these contentions in their order.
 

 Under the act of 1923 (110 Ohio Laws, 214), Section 614-86, General Code, read as follows:
 

 
 *191
 
 “The Public Utilities Commission of the state of Ohio is hereby vested with power and authority to supervise and regulate each such motor transportation company in this state; to fix, alter and regulate rates; to regulate the service and safety of operation of each such motor transportation company; to prescribe safety regulations, and designate stops for service and safety on established routes; to require the filing of annual and other reports and of other data by such motor transportation companies; to provide uniform accounting systems; and to supervise and regulate motor transportation companies in all other matters affecting the relationship between such companies and the public to the exclusion of all local authorities in this state. The commission, in the exercise of the jurisdiction conferred upon it by this chapter, shall have the power and authority to prescribe rules and regulations affecting such motor transportation companies, notwithstanding the provisions of any ordinance, resolution, license or permit heretofore enacted, adopted or granted by any incorporated city or village, city and county, or county, and in case of conflict between any such ordinance, resolution, license or permit, the order, rule or regulation of the Public Utilities Commission shall, in each instance prevail; provided that such local subdivisions may make reasonable local police regulations within their respective boundaries not inconsistent with the provisions of this chapter. ’ ’
 

 In 1925 the Legislature amended Section 614-84, in the portions material to this controversy, .to read as follows (111 Ohio Laws, 515):
 

 Section 614-84: “(a) The term ‘motor transpor
 
 *192
 
 tation company,’ when used in this chapter, means every corporation, company, association, joint stock association, person, firm or copartnership, their lessees, trustees, receivers or trustees appointed by any court whatsoever, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails, used in the business of transportation of persons, or property, or both, as a common carrier for hire, under private contract or for the public in general, over any public highway in this state; provided, however, that the term ‘motor transportation company’ as used in this chapter shall not include any private contract carrier, as defined in Section '614-2, and shall not include any person or persons, firm or firms, copartnership or voluntary association, joint-stock association, company or corporation, wherever organized or incorporated, in so far as they own, control, operate or manage a motor vehicle or motor vehicles used for the transportation of persons or property, or both, and which are operated exclusively within the territorial limits of a municipal corporation, or within such limits and the territorial limits of municipal corporations immediately contiguous thereto * *
 

 In 1925 the Legislature also amended Section 614-86 to read as follows (111 Ohio Laws, 20):
 

 Section 614-86: “The Public Utilities Commission of the state of Ohio is hereby vested with power and authority to supervise and regulate each such motor transportation company in this state; to fix, alter and regulate rates; to regulate the service and safety of operation of each such motor transportation company; to prescribe safety regulations, and designate stops for service and safety on established
 
 *193
 
 routes, to require the filing of annual and other reports and of other data by such motor transportation companies; to provide uniform accounting systems,- and to supervise and regulate motor transportation companies in all other matters affecting the relationship between such companies and the public to the exclusion of all local authorities in this state, except as hereinafter otherwise provided. The commission, in the exercise of the jurisdiction conferred upon it by this chapter, shall have the power and authority to prescribe rules and regulations affecting such motor transportation companies, notwithstanding the provisions of any ordinance, resolution, license or permit enacted, adopted or granted by any incorporated city or village, city and county, or county, and in case of conflict between any such ordinance, resolution, license or permit, the order, rule or regulation of the Public Utilities Commission shall, in each instance
 
 prevail;
 
 provided that such local subdivisions may make reasonable local police regulations within their respective boundaries not inconsistent with the provisions of this chapter; provided, further, that no motor transportation company operating under a certificate of convenience and necessity shall carry persons whose complete ride is wholly within the territorial limits of a municipal corporation, or within such limits and the territorial limits of municipal corporations immediately contiguous thereto, except with the consent of such municipal corporation or municipal corporations.”
 

 As is evident, the amendment to Section 614-86, with the exception of the words “except as herein
 
 *194
 
 after otherwise provided, ’ ’ in the first sentence, consists only of the proviso at the end of the section, which requires that the motor transportation company carrying passengers whose complete ride is wholly within a municipal corporation, or within such municipal corporation and a municipal corporation immediately contiguous thereto, must secure the consent of sueh municipal corporation or corporations.
 

 It is in brief the argument of the plaintiff in error that the amended Sections, 614-84 and 614-86, and hence the ordinance which plaintiff in error assumes was enacted by the city of Toledo under the authority of these Code sections, are unconstitutional upon the ground that they contravene numerous sections of the state and federal Constitutions. These sections in their material portions, read as follows:
 

 Section 1, Article XIV, Amendments to United States Constitution: “* * * Nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
 

 Section 28, Article II, Ohio Constitution: “The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts * * *.”
 

 Section 10, Article I, United States Constitution: “No state shall * * * pass any *
 
 * *
 
 ex post facto law, or law impairing the obligation of contract * *
 

 Section 26, Article II, Ohio Constitution: “All laws, of a general nature, shall have a uniform operation throughout the state * * *.”
 

 
 *195
 
 Section 5, Article XII, Ohio Constitution: “No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.”
 

 Section 10, Article XII, Ohio Constitution: “Laws may be passed providing for excise and franchise taxes and for the imposition of taxes upon the production of coal, oil, gas and other minerals.”
 

 Section 19, Article I, Ohio Constitution: “Roads * * * shall be open to the public, without charge # # *
 
 9J
 

 Section 20, Article I, Ohio Constitution: “This enumeration of rights shall not be construed to impair or deny others retained by the people; and all powers, not herein delegated, remain with the people.”
 

 Section 3, Article XVIII, Ohio Constitution: “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
 

 Plaintiff in error concedes that the certificate of convenience and necessity, under the recent holdings of this court, constitutes only a license, but claims that while such license is unrevoked the motorbus company has property rights arising from the possession of the certificate which cannot be restricted, by the statutes and ordinance above quoted. It urges that the certificate can be revoked only by the Public Utilities Commission, acting under Section 614-87, General Code, or by an act of the Legislature repealing the statute authorizing the
 
 *196
 
 license, and claims that, as the certificate has been revoked by neither method, it is in unlimited force, as it was prior to the amendment of the statute in 1925.
 

 It is conceded that the Public Utilities Commission has not revoked tfie certificate, nor has the Legislature expressly repealed the earlier statute. However, the amendment, in so far as it is irreconcilably in conflict with the original enactment, operates as a repeal by implication. 25 Ruling Case Law, 914, Section 167;
 
 Goff
 
 v.
 
 Gates,
 
 87 Ohio St., 142, 100 N. E., 329;
 
 State ex rel. Enos, Pros. Atty.,
 
 v.
 
 Stone,
 
 92 Ohio St., 63, 110 N. E., 627. The plaintiff in error agrees that the Legislature has power to revoke this license by express repeal. It must therefore logically follow that the Legislature has the power to limit or qualify the exercise of such license, and this was the exact result accomplished by the amendment of 1925. In só far as the amended sections qualified the permission to operate a motor transportation company without restriction within the limits of a municipality, the qualification acts as a repeal pro tanto of the original statute.
 

 The certificate did not constitute a franchise, nor a contract. It conveyed to the plaintiff in error no vested right or proprietary interest in the use of the public highways.
 
 Pennsylvania Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 116 Ohio St., 80, 158 N. E., 182;
 
 Westhoven
 
 v.
 
 Public Utilities Commission,
 
 112 Ohio St., 411, 147 N. E., 759;
 
 Estabrook, Receiver,
 
 v.
 
 Public Utilities Commission,
 
 112 Ohio St., 417, 147 N. E., 761;
 
 Red Ball Transit Co.
 
 v.
 
 Public Utilities Commission,
 
 112 Ohio St., 462, 147 N. E., 762;
 
 *197
 

 Blackmore, Receiver,
 
 v.
 
 Public Utilities Commission,
 
 117 Ohio St., 554, 160 N. E., 27.
 

 The permission granted by the certificate to operate upon the public highways could not invest the plaintiff in error with the right to use the public streets for his private business purposes.
 
 Rowe, Jr.,
 
 v.
 
 City of Cincinnati,
 
 117 Ohio St., 382, 159 N. E., 365. Since the license was not a contract between the state and the licensee, its revocation or limitation by the enactment of the amendment of 1925 affected no property rights whatever. 17 Ruling Case Law, 476. This authority states that, inasmuch as a license is not a contract, “free latitude is reserved by the Legislature to impose new or additional burdens on the licensee, or to alter the license, or to revoke or annul it. And this is the general rule, notwithstanding the expenditure of money by the licensee in reliance thereon, and regardless of whether the term for which the license was given has expired.” Decisions of importance which have laid down this same doctrine are
 
 Prater
 
 v.
 
 Storey
 
 (Tex. Civ. App.), 249 S. W., 871;
 
 State
 
 v.
 
 Hovorka,
 
 100 Minn., 249, 110 N. W., 870, 8 L. R. A. (N. S.), 1272, 10 Ann. Cas., 398;
 
 Stone, Supt.,
 
 v.
 
 Fritts,
 
 169 Ind., 361, 82 N. E., 792, 15 L. R. A. (N. S.), 1147, 14 Ann. Cas., 295;
 
 Littleton
 
 v.
 
 Burgess,
 
 14 Wyo., 173, 82 P., 864, 2 L. R. A. (N. S.), 631;
 
 City of Lowell
 
 v.
 
 Archambault,
 
 189 Mass., 70, 75 N. E., 65, 1 L. R. A. (N. S.), 458;
 
 Newson
 
 v.
 
 City of Galveston,
 
 76 Tex., 559, 13 S. W., 368, 7 L. R. A., 797;
 
 Doyle
 
 v.
 
 Continental Ins. Co.,
 
 94 U. S., 535, 24 L. Ed., 148;
 
 Prettyman
 
 v.
 
 Florida Real Estate Commission
 
 (Fla.), 109 So., 442;
 
 Booth
 
 v.
 
 City of Balias
 
 (Tex. Civ. App.), 179 S.
 
 W.,
 
 301;
 
 Ex parte
 
 
 *198
 

 Mayes,
 
 64 Okla., 260, 167 P., 749. Hence neither the amended sections nor the enactment of the ordinance affected the property rights of the plaintiff in error, nor violated Section 1, Article XIV, of the United States Constitution.
 

 It is also vigorously urged that the amended Code sections constitute a retroactive law, and an ex post facto law, and that the enactments hence violate Section 28, Article II, of the Ohio Constitution, and Section 10, Article I, of the United States Constitution. The plaintiff in error argues that since the license was granted in 1923, the condition imposed in the amendment of 1925 creates a new obligation, duty or disability in respect to a past transaction. However, the amended sections look toward the future only. They make no provision with regard to passenger hauls already completed, but simply regulate passenger hauls within the municipality to be made thereafter. A later paragraph does contain a penal provision against the violation of these sections (Section 614-100), and upon this fact the plaintiff in error grounds his claim that the amended statutes constitute an ex post facto law. However, no act of hauling prior to the enactment is made unlawful. We repeat that the provision looks simply to transportation in the future, and cannot by any stretch of the imagination be held to penalize past acts or to impose new obligations, duties, or disabilities with regard to past acts. Hence neither the amended statutes nor the ordinance are invalid upon this ground.
 

 In this connection the plaintiff in error contends that, since the taxes required for the exercise of the privilege were paid for the year 1925, the amend
 
 *199
 
 ment enacted in that year was peculiarly onerous because of the fact that a tax had been collected for a privilege withdrawn prior to the expiration of that particular tax period. This question upon this record we regard as not being serious, for the ordinance itself was enacted January 17, 1927, so that' the withdrawal by the city of its acquiescence in an unrestricted intercity transportation did not occur until after the tax period for the year 1925 had elapsed, and plaintiff in error was not restricted in its operation during that particular year.
 

 Plaintiff in error further urges that the enactment offends against the constitutional provision for the uniform operation of laws of a general nature. Section 26, Article II, Ohio Constitution. However, the amended statutes apply to every motor transportation company operating within the confines of any municipality or municipalities contiguous thereto. Hence under the well-known rule as to the uniform operation of general laws, neither the amended statute nor the ordinance is unconstitutional. It “operates upon every person brought within the relation and circumstances provided for and in every locality where the condition exists.”
 
 State ex rel. Yaple
 
 v.
 
 Creamer, Treas.,
 
 85 Ohio St., 349, 97 N. E., 602, 39 L. R. A. (N. S.), 694;
 
 Assur
 
 v.
 
 City of Cincinnati,
 
 88 Ohio St., 181, 102 N. E., 702;
 
 City of Xenia
 
 v.
 
 Schmidt,
 
 101 Ohio St., 437, 130 N. E., 24.
 

 It is. also contended that the statutes permit the levy of a tax not in pursuance of law,.in violation of Sections 5 and 10, Article XII, of the Ohio Constitution. We do not agree with this contention. Whatever tax is levied upon the motorbus company
 
 *200
 
 for the operation of its cars is levied in express pursuance of law; and the mere claim that the law is unwise does not establish a violation of either of these sections.
 

 Plaintiff in error also claims that, if these sections áre held to be constitutional, Section 19, Article I, of the Ohio Constitution, which provides that roads shall be open to the public without charge, is infringed. We think that this question is disposed of by the recent ruling of this court in the case of
 
 Rowe, Jr.,
 
 v.
 
 City of Cincinnati, supra,
 
 in which it was held that there is no right to the permanent use of a public street for business purposes. The motor-bus company is not seeking to use these streets as a member of the public. In this case the transportation company claims the right to employ the roads and highways within the city for its private business, and for that purpose only. Hence this contention of the utility is overruled.
 

 In conclusion, the plaintiff in error states that the amended sections create a new kind of political subdivision, consisting of ‘
 
 ‘
 
 contiguous municipal corporations” which may impose their consent upon each other in the matter of intracity transportation, and states that as the Constitution creates only four kinds of political subdivisions — counties, townships, cities and villages — Section 20, Article I, of the Ohio Constitution, is infringed by the act. If this argument be sustained, the joint ditch commissions, which have long had the sanction, both of statutory enactment and of the decisions of this court, must necessarily be unconstitutional. It was held as long ago as 1882 that the Legislature has power to provide that where a proposed ditch is in more
 
 *201
 
 than one county, a majority of the board of county commissioners of each county may in joint session locate and establish the same.
 
 Chesbrough
 
 v.
 
 County Comm’rs,
 
 37 Ohio St., 508;
 
 Cuff, Judge,
 
 v.
 
 State ex rel.,
 
 52 Ohio St., 361; 43 N. E., 1039;
 
 Elder
 
 v.
 
 Smith, Auditor,
 
 103 Ohio St., 369, 133 N. E., 791.
 

 Moreover, if this argument be sustained, the conservancy districts would seem to be unconstitutional. Nevertheless, this court held that the conservancy act, which confers jurisdiction on the court of common pleas of any county of th,is state to establish conservancy districts when the conditions stated in the act are found to exist, as well as the provisions of the act which provide for the organization and membership of such court, in case of a district lying in more than one county, arc valid and not repugnant to any provision of the Constitution.
 
 Snyder
 
 v.
 
 Deeds,
 
 91 Ohio St., 407, 110 N. E., 1068;
 
 Miami County
 
 v.
 
 City of Dayton,
 
 92 Ohio St., 215, 110 N. E., 726.
 

 We are unable to distinguish in principle between the establishment of a ditch which lies within contiguous counties, or the establishment of a conservancy district which embraces territory in contiguous counties, and the establishment of motorbus operation within more than one municipality. A political subdivision is a part of the political whole, which a'cts as a unit politically so long as it retains its entity as such political subdivision. The requirement that the consent of contiguous municipalities must be obtained in motorbus operation through the limits of such municipalities does not, in any sense of the word, cause such municipalities to function together as a political unit. Their consent, if given,
 
 *202
 
 has to be given separately and by virtue of independent municipal action. Hence we hold that no new political subdivision is formed by the simple provision that, when an operation is carried on wholly within the territorial limits of the corporation, or within such limits and the territorial limits of municipal corporations immediately contiguous thereto, the consent of such corporation or corporations must be secured.
 

 Furthermore, we fail to fathom the contention, that these statutes infringe upon the principle of home rule for cities. (Section 3, Article XVIII, Ohio Constitution.) In fact, the express wording of the act and the conditions which led to its enactment show that the statutes were enacted in order that they might conform to the doctrine that municipalities should exercise all poAvers of local self-government.
 

 The plaintiff in error begins its argument by conceding that, prior to the enactment of the original motor transportation act, the cities had constitutional authority to regulate motorbusses operating within their territorial jurisdiction. Since the constitutionality of such regulation is conceded, we fail to understand why a regulation carried on under the present ordinance possesses any unconstitutional features, for the regulation established thereby is exactly the sort of regulation which plaintiff in error concedes was constitutional prior to the enactment of the motor transportation act. -
 

 The question whether or not the amended Code sections are authorized by the home rule provision of the Constitution (Section 3, Article XVIII), from our view of the case, need not be discussed.
 
 *203
 
 Whether the regulation is authorized under the constitutional provision, or whether it needed statutory sanction, in either case the regulation is lawful, for the home rule provision is still in force, and the statutory sanction, if necessary, was given by the amendment of 1925.
 

 The contention of plaintiff in error that the statutes and ordinances do not apply to its present operation because its certificate was granted prior to the enactment of the amended sections and of the ordinance is answered by the propositions above stated. Since the certificate is a license only, the Legislature is empowered to modify the permission granted therein, and the modification and restriction of that permission apply’ to all future acts done by the motor transportation company under the certificate.
 

 Entertaining these opinions, the judgment of the Court of Appeals must be affirmed.
 

 Judgment
 
 affirmed.
 

 Marshall, C. J., Day, Jones and Matthias, JJ., concur.
 

 Kinkade and Robinson, JJ., concur in judgment.