Day, J.
 

 The protestants make three claims why the findings and orders of the Commission should be reversed:
 

 First, that the so-called temporary order (a) was
 
 *575
 
 unlawful and unreasonable; (b) that a rehearing should have been granted thereon.
 

 Second, that the granting of the extension on certificate 847 was unlawful because it created overlapping certificates; that the applicant, therefore, was guilty of fraud and lack of good faith; and that there was not sufficient competent evidence to prove public convenience and necessity for such extension.
 

 Third, that the Public Utilities Commission illegally exercised judicial power in the premises.
 

 First. A solution of these problems requires a careful examination of the record as to the transportation the public was receiving between July 5th and the afternoon of July 10th. The receiver was appointed on July 5th and seems to have continued the operation over this route from July 5th to July 8th, according to the testimony of F. W. Fisher, the superintendent of the interurban station at Toledo; the record disclosing:
 

 “Q. Were you familiar with the time when the Black Hawk Lines stopped operation? A. Yes, sir.”
 

 “Q. When is that? A. I think it was at noon, July 8.”
 

 L. P. Temple, president of the applicant company, also testified that service stopped on July 8, 1929.
 

 It is quite true that Peck, the receiver, testified that he operated until July 10th, when, “in deference to the temporary order of the Commission,” the receiver ceased operation, after the Michigan-Ohio Bus Lines, Inc., began. While there is this conflict in the testimony, the Commission, under date of July 10th, issued its temporary order, authorizing the Michigan-Ohio Bus Lines to operate over the
 
 *576
 
 route theretofore served by the Black Hawk Lines, Inc., there not being sufficient time to advertise, and the public, the Commission found, being wholly without transportation service between Toledo and Sylvania. By reason of such emergency, and solely for the purpose of providing transportation for the public, this motor transportation service was granted until the further order of the Commission.
 

 It is conceded in the brief of plaintiff in error that the same “was granted by the Commission in good faith, to care for a supposed emergency;” but it is claimed such grant was made upon the misrepresentation of the Michigan-Ohio Bus Lines, Inc.; that such being the case, the temporary order, and the final order also, should be revoked on the authority of
 
 Westhoven
 
 v.
 
 Public Utilities Commission,
 
 112 Ohio St., 411, 147 N. E., 759, being a case where a certificate was revoked upon the ground that it had been obtained by “false statements and upon misrepresentations. ’ ’
 

 It is the violation of Section 614-87, General Code, that is the basis of the contention of plaintiff in error. This section provides, in substance, that the Commission shall have power, after notice and hearing, when an applicant requests a certificate to operate in territory already served by another motor transportation company, holding a certificate of public convenience and necessity, to grant a certificate only when the existing motor transportation company does
 
 not
 
 provide the service required or the particular kind of equipment necessary to furnish such service; and, further, such section provides that, on finding of the Public Utilities Commission that any motor transportation company does not
 
 *577
 
 give convenient and necessary service in accordance with the orders of the Commission, snch motor transportation company shall be given a reasonable time, not less than 60 days, to provide such service before any existing certificate is canceled or a new one granted over the route in question.
 

 A receiver had been appointed for the Black Hawk Bus Lines, Inc.; its liabilities were in the neighborhood of $70,000 and its assets about $900. The company and its officers were enjoined from conducting any of the business of the defendant and from taking any of its property or assets. Chattel mortgagees replevined most of the equipment with which it was operating, and, while the receiver attempted to operate, it was only in a limited way.
 

 The application of the provision of Section 614-87, General Code, requiring the giving of a reasonable time, not less than 60 days, within which to provide adequate service, would have been a useless and futile thing and well-nigh impossible under the circumstances confronting the Commission, with the holder of the certificate financially bankrupt and with no adequate equipment.
 

 Believing in good faith that the public living along the line of this route was without transportation service, that the transportation company then holding the certificate serving such territory did not provide the service required or the particular kind of equipment necessary to furnish such service, and that the public was practically without transportation, we cannot find that such temporary order, issued as an emergency measure, violated the letter or spirit of Section 614-87, General Code.
 

 Second, was the granting of the extension on cer
 
 *578
 
 tificate 847 unlawful because it created overlapping certificates ?
 

 These objections go entirely to the weight of the evidence and the character of the proof adduced by the applicant. It is claimed that in the neighborhood of 5,000 persons reside along the route, and in the small villages along the route, and that 1,500 to 1,800 commute daily between Toledo and Sylvania.
 

 The character of the testimony in support of the application we think fully justified the Commission in granting the extension; nor do we find that there is such proof of fraud and connivance and lack of good faith upon the part of the applicant as would justify the denial of such extension.
 

 We find no proof of any prior arrangement between the Mack International Motor Truck Corporation and the Michigan-Ohio Bus Lines, Inc., by which the Commission was imposed upon in granting the extension in question. The record discloses that the Black Hawk Company was highly insolvent, with assets at the appraised value of $900 and debts in the amount of $70,000, of which $28,000 was owing to the laborers and general creditors, and $45,000 upon the equipment, covered by chattel mortgage. The Mack International Motor Truck Corporation surely had a right to protect its interests by enforcing its claims under its chattel mortgage.
 

 The Michigan-Ohio Bus Lines were in no wise a party to the contracts and obligations and chattel mortgages existing between the Mack Motor Company and the Black Hawk Bus Lines, and after the Mack company had worked out its problems with the Black Hawk Company, it was entirely within its rights to deal with the Michigan-Ohio Bus Lines,
 
 *579
 
 Inc., as it saw fit. The transactions between the latter companies do not appear to have been of such fraudulent character as would warrant the Public Utilities Commission in refusing an extension of route 847.
 

 We hold that the notice and hearing provided for in Section 614-87, General Code, relate to a motor transportation company actually
 
 serving
 
 the traveling public along the route in question, not to a company whose operations are problematical.
 

 The granting of the extension upon the merits is after all the real controversy; and the legality of such order must center about a question of fact, whether there was an actual operation along this route, under certificates 82 and 83, at the time of the issuing of the temporary order.
 

 The Commission found that there was not and on that point there is some conflict in the testimony. The witnesses Fisher, manager of the interurban station, and Temple, testified that the Black Hawk Bus Lines stopped operation at noon on July 8th. The receiver testified that operations were continued until the 10th, when, the temporary order being issued by the Commission, the receiver voluntarily ceased operations. While the receiver was operating he used substitute equipment, the four Mack busses having been repossessed by the Mack company and transferred to the Michigan-Ohio Bus Lines, Inc. Upon this point of abandonment by the Black Hawk company’s receiver it is well to note that no authority or permission from the Commission to operate was sought by the receiver, as required by the statute then in existence, Section 614-87a, the amendment touching receivers, not being in effect until July 23, 1929 (113 Ohio Laws, 487);
 
 *580
 
 nor did the receiver make any effort to continue operations after July 10th, but voluntarily ceased.
 

 So the Commission had evidence before it to justify finding that by reason of the insolvency of the then holder of certificates 82 and 83, the receivership, the loss of equipment, and the practical abandonment of service over the route, the interests of the traveling public in this populous territory needed transportation to and from Toledo and required the granting of the extension prayed for by the applicant, the Michigan-Ohio Bus Lines, Inc.
 

 Third, did the Commission exercise judicial powers and seek to nullify the orders of the common pleas court, in which the receiver was appointed?
 

 The right to appoint a receiver for the Black Hawk Company was not questioned, and its certificates were not revoked by such appointment; nor could they be revoked without cause. However, the jurisdiction of the Commission is exclusive in the suspension and regulation of public utilities service over the highways of the state, outside municipalities.
 
 State, ex rel. Thomas,
 
 v.
 
 Thomas, Judge, ante,
 
 450, 169 N. E., 454.
 

 In the exercise of its jurisdiction, the approval of the Commission to any sale of a certificate was an essential requisite, and the record does not disclose that any such application for such approval has been made. The issue in this case was the granting- of an extension on certificate 847, upon application of the Michigan-Ohio Bus Lines, Inc., and the denial of the claim of the protestants. No interference with the orders of the common pleas court is shown. It may be that the proposed sale of certificates 82 and 83 with the consent of the Public
 
 *581
 
 Utilities Commission will bring less money than if sold before the extension on certificate 847 was granted; but this court has often announced the principle that no property right exists in the highway by reason of a certificate of necessity and convenience, and the acquisition of such certificate does not add to the legal assets of the holder thereof.
 
 Estabrook, Receiver,
 
 v.
 
 Public Utilities Commission,
 
 112 Ohio St., 417, 147 N. E., 761;
 
 Pennsylvania Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 116 Ohio St., 80, 155 N. E., 694;
 
 Blackmore, Receiver,
 
 v.
 
 Public Utilities Commission,
 
 117 Ohio St., 554, 160 N. E., 27.
 

 The settlement of the affairs of the Black Hawk Company is in no wise interfered with by granting this extension of certificate No. 847; and the convenience and necessity of the traveling public over this route was the first consideration. The claims of the creditors of this insolvent corporation must be secondary thereto. We find no nullifying of the orders of the court of common pleas, nor the exercise of any judicial functions by granting this extension of the certificate of the Michigan-Ohio Bus Lines, Inc., to meet the convenience and necessity of the public living along this populous route between Toledo and Sylvania.
 

 We think the Commission was justified in granting such extension, and that the best interests of the public were subserved thereby. Hence our conclusion is that its findings and orders in the premises were neither unlawful nor unreasonable, and the same are hereby affirmed.
 

 Order affirmed.
 

 Marshall, C. J., Kinkade, Bobinson, Jones, Matthias and Allen, JJ., concur.