HAROLD D. MILLER, INC., APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO, APPELLEE.

[Cite as Harold D. Miller, Inc., v. Pub. Util. Comm.
10 Ohio St. 2d 53.]

(No. 40227—Decided April 5, 1967.)

54

*Messrs. Burneson, Krier, Clark & Asher* and *Mr. Taylor C. Burneson,* for appellant.

*Mr. William B. Saxbe,* attorney general, *Mr. J. Philip Redick* and *Mr. Langdon D. Bell,* for appellee.

TAFT, C. J.  It is contended that the order appealed from is unlawful because its effect is to authorize and consent to the

sale of part of a certificate of public convenience and necessity issued by the Public Utilities Commission to a motor transportation company.

It is obvious that that is its effect.

In *Braddock* v. *Public Utilities Commission* (1940), 137 Ohio St. 59, 27 N. E. 2d 1016, the syllabus reads:

"Under the provisions of Sections 614-87 and 614-87*a*, General Code [now Sections 4921.10 and 4921.13, Revised Code], the Public Utilities Commission of Ohio is not vested with authority, express or implied, to consent to the transfer of a part of a certificate of public convenience and necessity to a purchaser thereof."

However, the commission has, at least since 1956, developed a so-called "pick up and drop" procedure. Under this, one carrier (such as Nardella in the instant case) files an application to abandon (*i. e.*, "drop") a part of its certificated authority, conditioned upon the commission granting the application of another carrier (such as Schoenheit) for that authority (*i. e.*, a "pick up" thereof). These applications are filed pursuant to an agreement between the two carriers providing for payment (if both applications are granted) by the second carrier to the first carrier for the portion of the certificate to be abandoned. The commission cooperates by hearing the two applications together and recognizing that the abandonment application is conditioned upon granting of the "pick up" application. The commission ignores the fact that the "pick up" carrier pays a consideration to the "drop" carrier for the additional authority it acquires.

As authority for this "pick up and drop" procedure, the commission relies upon the following dicta in the opinion by Day, J., in the *Braddock case* (page 64):

"As further indication of the fact that transfer of a part of a certificate was not contemplated by the Legislature, we find that Section 614-93, General Code [now Section 4921.16, Revised Code], permits the changing of a certificate by extending or shortening the route, or otherwise varying the provisions of the certificate, upon application to the commission, thereby obviating the need for transfer of a part of a certificate. Section 614-93, General Code, and Sections 614-87 and 614-87a, General

Code [now Sections 4921.16, 4921.10 and 4921.13, Revised Code], are *in pari materia* and may therefore be read and construed together.''

The commission argues that this supports their conclusions:

1. That a motor transportation company may file an application under Section 4921.16, Revised Code (formerly Section 614-93, General Code), to vary the provisions of its certificate so as to abandon part of its certificated authority; and, if the procedural requirements of Section 4921.09 are followed and the commission approves an appropriate amendment of its certificate pursuant to Section 4921.10, Revised Code (formerly Section 614-87, General Code), such carrier may thus abandon that part of its certificated authority,* and

2. That another such carrier may file an application under Section 4921.16, Revised Code (formerly Section 614-93, General Code), for that abandoned certificated authority, or to vary the provisions of such other carrier's certificate so as to add that abandoned certificated authority to its existing certificated authority; and, if the procedural requirements of that section are followed and the commission grants the requested authority pursuant to Section 4921.10, Revised Code (formerly Section 614-87, General Code), such other carrier may thus acquire the certificated authority abandoned by the first carrier.

However, even if those conclusions are sound, it does not follow that the order of the commission in the instant case, or its use of the so-called ''pick up and drop'' procedure, is lawful.

That order and that procedure are obviously designed to enable the abandoning carrier to sell for a substantial consideration the abandoned part of its certificated authority.

What other purpose could there be for permitting the abandonment application to be made dependent upon a grant-

---

*In the instant case, it has been argued that the statutes do not empower the commission to authorize abandonment by an irregular route carrier of part of its certificated authority. But see *Northern Ohio Traction & Light Co.* v. *Public Utilities Commission* (1925), 113 Ohio St. 93, 95, 148 N. E. 584, and dicta quoted from opinion in *Braddock* v. *Public Utilities Commission, supra* (137 Ohio St. 59). In view of our conclusions, we deem it unnecessary to consider that argument. We will assume, without deciding, that the statutes do empower the commission to authorize abandonment by an irregular route carrier of part of its certificated authority.

ing of the other carrier's application to acquire the abandoned authority, and for consolidating the two applications for a joint hearing? Also, the commission cannot ignore a sales agreement such as that in the instant case.

This brings us to the question whether it is unlawful for the commission to make an order that is designed to enable a motor transportation company to receive a consideration for abandoning part of its certificated authority.

In *Westhoven* v. *Public Utilities Commission* (1925), 112 Ohio St. 411, 147 N. E. 759, the syllabus reads, in part:

"A certificate of public convenience and necessity, issued * * * to operate 'a motor transportation company,' is a license personal in its character, and is not transferable, and does not pass by succession."

In *Estabrook, Receiver,* v. *Public Utilities Commission* (1925), 112 Ohio St. 417, 147 N. E. 761, the syllabus reads, in part:

"A certificate of public convenience and necessity is not an asset with which a receiver of a motor transportation company can be charged, or which he may sell and convert into an asset * * *."

See also *Red Ball Transit Co.* v. *Public Utilities Commission* (1925), 112 Ohio St. 462, 147 N. E. 762; *Scheible, Mayor,* v. *Hogan* (1925), 113 Ohio St. 83, 148 N. E. 581; and *Small* v. *Public Utilities Commission* (1925), 113 Ohio St. 650, 655, 150 N. E. 37.

Thereafter, Section 614-87a, General Code (now Section 4921.13, Revised Code), was enacted. This authorized transfer of "a certificate of public convenience and necessity" upon death of a person operating thereunder, upon dissolution of a partnership operating thereunder, or by a court-appointed receiver or trustee of a motor transportation company which had been operating thereunder. In such instance, the statute requires "the consent of the commission" for a transfer. The statute further provides generally:

"In all other cases, a certificate of public convenience and necessity shall not be transferred except with the consent of the commission after a public hearing had thereon."

In *Pennsylvania Rd. Co.* v. *Public Utilities Commission*

(1927), 116 Ohio St. 80, 155 N. E. 694, decided shortly after the enactment of Section 614-87*a*, General Code (now Section 4921.-13, Revised Code), this court was confronted with the inevitable conclusion that, where one party has a right to do something which right is not readily available to others and where such right may be a source of profit to its holder, some other party may be willing to pay a consideration if that right can be transferred to him.

That the transferability of a right or license is of value was recognized in the opinion in *State, ex rel. Thomas,* v. *Thomas, Judge* (1929), 121 Ohio St. 450, 454, 169 N. E. 454, where it is stated:

"* * * It is true that such a certificate does not confer a property right, but it does not follow that a certificate has no value. * * *"

See also *Peck, Recr.,* v. *Public Utilities Commission* (1930), 121 Ohio St. 571, 580, 581, 170 N. E. 364; *Wrightesmith* v. *Public Utilities Commission* (1963), 174 Ohio St. 537, 191 N. E. 2d 160.

As a corollary, if such right or license cannot be transferred, it can have no value except to its holder while he has it. This is recognized, in the instant case, by the condition, making the purchase by Schoenheit dependent upon the granting of its application, inserted in the contract between Schoenheit and Nardella and in Nardella's application to delete filed with the the commission. It is also the reason for the "pick up and drop" procedure.

With regard to the transferability of certificates, Section 614-87*a*, General Code (now Section 4921.13, Revised Code), was designed to specifically cover hardship cases, such as where a certificate holder dies, where a partnership holding a certificate is dissolved, and where creditors of a certificate holder seek to satisfy their obligations out of what the certificate holder actually has, including his certificated authority as a motor transportation company which is something that others cannot readily acquire and which might have a value if transferable. That the general language quoted from that statute is not to be broadly interpreted is apparent from our decision in *Pennsylvania Rd. Co.* v. *Public Utilities Commission, supra* (116 Ohio St. 80).

Even as late as *Alspaugh* v. *Public Utilities Commission* (1946), 146 Ohio St. 267, 65 N. E. 2d 263, this court stated (paragraph one of syllabus) that "a certificate of public convenience and necessity issued to a motor transportation company * * * is a revokable license conferring no property rights upon the holder * * *."

Only by authorizing the transfer of such a certificate with the consent of the Public Utilities Commission has the General Assembly empowered the commission to enable the holder to receive any consideration for his certificate.

In *Braddock* v. *Public Utilities Commission, supra* (137 Ohio St. 59), we specifically held that Section 614-87*a*, General Code (now Section 4921.13, Revised Code), did not authorize transfer of a part of such a certificate. As pointed out above, there could have been no transfer of a certificate at all without that statute.

Therefore, in our opinion, any procedure designed by the commission to enable transfer of a part of a certificate for a consideration is contrary to the pronouncements of the General Assembly and the decisions of this court and is unlawful.

It follows that the order of the commission is unlawful and must be reversed.

*Order reversed.*

STRAUB, MATTHIAS, O'NEILL, SCHNEIDER and BROWN, JJ., concur.

HERBERT, J., concurs in paragraphs one, three and four of the syllabus and in the judgment.

STRAUB, J., of the Sixth Appellate District, sitting for ZIMMERMAN, J.