In re CLEVELAND FREIGHT LINES, INC., Debtor.

Bankruptcy No. B80–02271.

United States Bankruptcy Court, N. D. Ohio, E. D.

Oct. 23, 1981.

Bernard S. Goldfarb, Karen N. Gittler, Goldfarb & Reznick, Cleveland, Ohio, for Trustee.

Robert W. Sharp, Gallagher, Sharp, Fulton, Norman & Mollison, Cleveland, Ohio, for Fruehauf Corp.

## MEMORANDUM OF OPINION

JOHN F. RAY, Jr., Bankruptcy Judge.

This matter came on for hearing on the motion of the trustee, Myron E. Wasserman, to determine the amount and validity of the lien of the Fruehauf Corporation ("Fruehauf") and briefs of counsel.

On June 17, 1976, Cleveland Freight Lines, Inc. ("CFL") gave its chattel mortgage and security agreement to Fruehauf Corporation to secure a debt of up to $1,400,000.00, arising out of the contemporaneous purchase from Fruehauf of 120 semitrailers. Security for the purchase price consisted of a first lien on each of the semitrailers, duly noted on the respective certificates of title, and on CFL's operating rights described as follows:

"All motor carrier operating rights now or hereafter owned by Cleveland Freight Lines, Inc., ("Debtor") provided that the lien hereof shall not attach to any such rights which Debtor is not permitted to encumber by applicable law and as to any such rights, Debtor covenants and agrees that it will not transfer or attempt to transfer any interest whatsoever in such rights to any party other than Fruehauf while this agreement is in force."

Appropriate financing statements were duly filed with the Cuyahoga County Recorder and the Secretary of State of Ohio to perfect the lien.

Thereafter, on June 26, 1980, CFL filed its petition in bankruptcy. In due course, the trustee filed his complaint to sell certain property of the debtor, including debtor's certificates of public convenience and necessity, consisting of Interstate Commerce Commission Certificate No. MC 99597, Sub. 2F, and three similar certificates of public convenience and necessity and Ohio Contract Permit No. 4786, all issued by the Public Utilities Commission of Ohio ("PUCO").

The parties agreed that as of July 17, 1980, the indebtedness of the debtor, secured by the lien to Fruehauf, was $1,261,928.45, plus interest from that date at the annual rate of 10.25 percent.

By order dated July 30, 1980, this Court held that Fruehauf had a good and valid lien on the 120 semitrailers (and other property) and, determining that said vehicles would not on sale bring a sufficient sum to satisfy the lien, ordered them abandoned. Thereafter, the said 120 semitrailers were sold at public sale by Fruehauf and produced the sum of $435,676.00 net, after costs of sale, leaving a deficiency of $826,252.45, plus interest.

In its order dated July 30, 1980, the Court authorized advertisement of CFL's motor carrier certificates of public convenience and necessity for sale, subject to determination at a later date of the validity of Fruehauf's lien on those certificates.

Thereafter, by agreement of the parties, the said operating rights of CFL were sold, and the lien of Fruehauf was transferred to the fund arising from the same, with the amount and validity of the lien to be determined at a later date.

The Court confirmed the following sale of operating rights:

| | |
|---|---|
| PUCO No. 3550–I | $96,000 |
| PUCO No. 11333–I | $12,000 |
| PUCO No. 11046–I | $ 3,100 |
| PUCO No. 4786 | $ 2,500 |
| ICC No. MC9597 Sub 2F | $41,000 |

An examination of the foregoing figures leaves it clear that if the lien on the said operating permits is valid, the remaining indebtedness of CFL to Fruehauf far ex-

ceeds the aggregate sale price of all permits.

Counsel for the trustee, on page 4 of his brief, conceded the validity of Fruehauf's lien on the Interstate Commerce Commission permit.

The question before this Court is whether Ohio certificates of public convenience and necessity, issued to operate a motor transportation company, are property in which a valid security interest can be acquired under the Uniform Commercial Code; and, if so, whether the security interest attaches to the proceeds when the certificates are sold.

The Supreme Court of Ohio has repeatedly held that certificates of public convenience and necessity issued to a motor transportation company by the PUCO are revocable licenses that confer no property rights upon the holder thereof. 34 O.Jur.2d 354 et seq., § 2; *Scheible, Mayor v. Hogan*, 113 Ohio St. 83, 148 N.E. 581; *Alspaugh v. P.U.C.*, 146 Ohio St. 267, 65 N.E.2d 263.

In the case of *Miller, Inc. v. P.U.C.*, 10 Ohio St.2d 53, 225 N.E.2d 269, the Supreme Court of Ohio held that a certificate of public convenience and necessity issued to a motor transportation company, pursuant to Chapter 4921, Revised Code, is a revocable license conferring no property rights upon the holder. And, at page 57, the Court went on to say:

"In *Westhoven v. Public Utilities Commission* (1925), 112 Ohio St. 411, 147 N.E. 759, the syllabus reads, in part:

" 'A certificate of public convenience and necessity, issued * * * to operate "a motor transportation company," is a license personal in its character, and is not transferable, and does not pass by succession.'

"In *Estabrook, Receiver v. Public Utilities Commission* (1925), 112 Ohio St. 417, 147 N.E. 761, the syllabus reads, in part:

" 'A certificate of public convenience and necessity is not an asset with which a receiver of a motor transportation company can be charged, or which he may sell and convert into an asset * * *.'

"See also *Red Ball Transit Co. v. Public Utilities Commission* (1925), 112 Ohio St. 462, 147 N.E. 762; *Scheible, Mayor, v. Hogan* (1925), 113 Ohio St. 83, 148 N.E. 581; and *Small v. Public Utilities Commission* (1925), 113 Ohio St. 650, 655, 150 N.E. 37.

"Thereafter, Section 614–87a, General Code (now Section 4921.13, Revised Code), was enacted. This authorized transfer of 'a certificate of public convenience and necessity' upon death of a person operating thereunder, upon dissolution of a partnership operating thereunder, or by a court appointed receiver or trustee of a motor transportation company which had been operating thereunder. In such instance, the statute requires 'the consent of the commission' for a transfer. The statute further provides generally:

" 'In all other cases, a certificate of public convenience and necessity shall not be transferred except with the consent of the commission after a public hearing had thereon.'

"In *Pennsylvania Rd. Co. v. Public Utilities Commission* (1927), 116 Ohio St. 80, 155 N.E. 694, decided shortly after the enactment of Section 614–87a, General Code (now Section 4921.13, Revised Code), this court was confronted with the inevitable conclusion that, where one party has a right to do something which right is not readily available to others and where such right may be a source of profit to its holder, some other party may be willing to pay a consideration if that right can be transferred to him.

"That the transferability of a right or license is of value was recognized in the opinion in *State, ex rel. Thomas, v. Thomas, Judge* (1929), 121 Ohio St. 450, 454, 169 N.E. 454, where it is stated:

" ' * * * It is true that such a certificate does not confer a property right, but it does not follow that a certificate has no value. * * *'

"See also *Peck, Recr., v. Public Utilities Commission* (1930), 121 Ohio St. 571, 580, 581, 170 N.E. 364; *Wrightesmith v. Public Utilities Commission* (1963), 174 Ohio St. 537, 191 N.E.2d 160."

 The trustee agrees that under Ohio law, certificates of public convenience and necessity may not be the subject of a lien, and, therefore, may not be the subject of a security interest under the Uniform Commercial Code. He contends that the Ohio statutes, Ohio Revised Code Section 4921.13 and subsequent interpretations thereof by the Supreme Court of Ohio clearly preclude the encumbrance of a certificate of public convenience and necessity. The statute does not in terms so provide. It reads that a certificate may not be transferred or sold except in the manner provided therein.

The Ohio Legislature adopted the Uniform Commercial Code, effective July 1, 1962, subsequent to the enactment of Section 4921.13, Ohio Revised Code, which provides that a security interest in favor of a creditor may be created in intangibles without any transfer or assignment thereof. The Uniform Commercial Code broadened previously existing law, and made other forms of property the subject of security interests.

Section 1309.01(A), Ohio Revised Code (U.C.C. 9–105, 9–106) provides, in part:
"(16) 'General intangible' means any personal property, including things in action, other than goods, accounts, chattel paper, documents, instruments, and money. All rights to payment earned or unearned under a charter or other contract involving the use or hire of a vessel and all rights incident to the charter or contract are accounts."

The Ohio certificates of public convenience and necessity fall within the foregoing definition of "general intangible" and are property within its scope, having a unique value. The Uniform Commercial Code, therefore, permits the creation of a security interest in such certificates.

Fruehauf's security interest attaches to the proceeds of the sale of the certificates by reason of Section 1309.25, Ohio Revised Code (U.C.C. 9–306) which, in pertinent part, provides:
"(B) Except where sections 1309.01 to 1309.50 of the Revised Code otherwise provide, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

In *Paramount Finance Company v. United States*, 379 F.2d 543, 1967, the United States Court of Appeals for the Sixth Circuit, affirming the District Court, held valid a security interest in an Ohio liquor license created in accordance with the Uniform Commercial Code. The Court said at page 544:
"The taxpayer [licensee] could not transfer to the lender title to the liquor license issued to it by the Ohio Department of Liquor Control, *Abraham v. Fioramonte*, 158 Ohio St. 213[6], 107 N.E.2d 321, 33 A.L.R.2d 1267 (1952), but the taxpayer could, and did, transfer to the lender a security interest in the liquor license, as constituting 'property' with unique value. *Nelson v. Naranjo*, 74 N.M. [502] 503, 395 P.2d 228 (1964). It is agreed by the litigants that this taxpayer's liquor license had pecuniary worth, so whether the license created a ' * * "property" right, is immaterial; for here * * * the tag "property" simply symbolizes the fact that courts enforce a claim which has pecuniary worth. * * * ' *Haelan Laboratories [, Inc.] v. Topps Chewing Gum, [Inc.,]* 202 F.2d 866, 868[1] (C.A. 2, 1953), cert. den. 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343."

Based upon the foregoing, this Court finds that Fruehauf Corporation has a valid lien on the proceeds of $154,600.00 from the sale of the five certificates of convenience and necessity identified as PUCO numbers 3550–I, 11333–I, 11046–I and 4786, and ICC number MC99597 Sub 2F, and is entitled to said proceeds.