[Crim. No. 2283. In Bank.—July 27, 1920.]

## In the Matter of the Application of LEE H. HINKELMAN for a Writ of Habeas Corpus.

[1] MOTOR VEHICLE ACT—HEADLIGHTS—PURPOSES OF REQUIREMENT.— The two main purposes of section 13 of the Motor Vehicle Act (Stats. 1919, p. 206), are to compel the driver of an automobile to use thereon headlights which (a) shall cast 'in front of the automobile a light of sufficient power to enable him, when driving in the dark, to see objects in the road at a distance of two hundred feet ahead, and which (b) shall not unduly dazzle the eyes of persons in front who may be looking toward him, and both purposes are met by the requirements of subdivision (g) of such section.

[2] ID.—DIFFUSING TYPE OF LENS—JUDICIAL NOTICE.—The phrase "diffusing type of lens" used in subdivision (k) of section 13 of the Motor Vehicle Act is apparently a trade name of recent origin and its use has not as yet become sufficiently general to enable a court to take judicial notice of its trade meaning.

[3] ID.—VIOLATION OF ACT—DIFFUSING TYPE OF LENS—PLEADING.— In a prosecution for driving an automobile on a public street equipped with a headlight more brilliant and set at different angle than that permitted by section 13 of the Motor Vehicle Act, the charge that the defendant's headlight was of the diffusing type of lens was sufficient as a pleading, and the meaning of the term could be proven at the trial whether or not the statute is in that particular sufficiently certain to be valid, is not decided.

[4] ID.—APPROVAL OF LENSES BY TESTING AGENCY.—Under the provisions of subdivision (k) of section 13 of the Motor Vehicle Act all lenses of the diffusing type must be submitted to the testing agency for approval and subjected to the same tests as to the maximum candle-power that are required for other types of lenses.

[5] ID.—USE OF UNLAWFUL HEADLIGHT—SUFFICIENCY OF COMPLAINT. A complaint charging the driver of an automobile with using a headlight sold commercially that had not been tested and sanctioned by the testing agency as provided in subdivision (j) of section 13 of the Motor Vehicle Act states a violation of the act, regardless of the fact that the headlight did not produce a dangerous glare.

[6] Id.—Qualities of Headlights — Establishment of Testing Agency—Power of Legislature.—The legislature has the power to establish a testing agency as to the quality of headlights which shall be used·by persons driving automobiles.

APPLICATION for a Writ of Habeas Corpus to secure release from custody for violation of Motor Vehicle Act. Denied.

The facts are stated in the opinion of the court.

James M. Oliver and Raymond Benjamin for Petitioner.

U. S. Webb, Attorney-General, and Leon French, Deputy Attorney-General, for Respondent.

SHAW, J.—Hinkelman was imprisoned on a warrant of arrest issued out of the police court of the city and county of San Francisco on a complaint charging him with violating sections 32 and 13 of the Motor Vehicle Act. (Stats. 1919, pp. 206, 225.) He applied for a writ of *habeas corpus,* claiming that the complaint does not charge a public offense and that sections 13 and 32 of said act, so far as they relate to the offense charged, are unconstitutional.

Section 32 declares it to be misdemeanor for any person to violate any provisions of the act. The particular violation here charged is the driving of an automobile on a public street equipped with a headlight more brilliant and set at a different angle than is permitted by the provisions of section 13. This section makes elaborate and complex regulations relating to headlights. The portions thereof applying to the present case may be summarized as follows:

Subdivision (a) provides that "at all times during the period from a half hour after sunset to a half hour before sunrise, every automobile while on the public highway shall carry at the front at least two lighted lamps." Subdivision (f) provides that during the time above stated "the headlights of all automobiles upon the highways shall give a light of sufficient power and so distributed as provided herein." The material provisions of subdivision (g) are as follows: "The headlights of motor vehicles shall be so arranged,

6. Statutory regulation of automobiles in matters other than speed, notes, 5 Ann. Cas. 793; 12 Ann. Cas. 291; Ann. Cas. 1915C, 712.

adjusted, and constructed when the car is fully loaded, that any pair of headlights under the conditions of use must produce a light which'':

(1) Is not less than one thousand two hundred apparent candle-power at a point two hundred feet directly in front of the lens, when measured on a level surface on which the car stands and at some point between such surface and a horizontal line passing through the top of the lens; (2) Does not exceed two thousand four hundred apparent candle-power at a point one hundred feet directly in front and five feet above such level surface and which has no greater power at a height above five feet at that distance; and (3) Does not exceed eight hundred apparent candle-power ''at a distance of one hundred feet ahead of the car and seven feet or more to the left of the axis of the same'' and five feet above the level surface on which the vehicle stands.

Subdivision (h) provides that no headlight referred to in subdivision (f) shall be used upon the highways until it shall have been tested as provided in subdivision (h). This subdivision makes elaborate provisions for the making of such tests by a testing agency to be appointed by the superintendent of the motor vehicle department. Subdivision (1) requires the superintendent of the motor vehicle department to make a written report of the result of the test and file a copy thereof with each county clerk in the state and with the official of each city, town or county whose duty it is to enforce the law. Subdivision (j) provides: ''It shall be unlawful for any manufactured device that is sold commercially to be used in connection with the headlight upon a motor vehicle to enable the same to comply with the provisions of subdivision (f) hereof unless such device shall have been first tested as provided in subdivision (h) hereof,'' and shall have been reported favorably by the testing agency, as complying with the requirements of the section, and such report incorporated into the report of the superintendent of the department and a copy thereof filed in the office of the county clerk of the county in which the device is used and sent to the city, county, or town police or traffic officers. Subdivision (k) contains the clause which has caused the difficulty in the present case. It reads as follows:

"Diffusing type of lens may be used with a candle-power not sufficiently great to produce a dangerous glare. The maximum of such candle-power shall be established by the testing agency selected by the superintendent of the motor vehicle department, based upon tests as hereinabove provided. Any device so certified shall be equipped with light bulbs labeled with the true candle-power thereof, not exceeding that prescribed."

The complaint on which Hinkelman was arrested charged that he did unlawfully drive along and upon a public highway at half past 8 o'clock P. M. an automobile occupied by himself alone, carrying at the front thereof two lighted headlamps "each equipped with a device that is sold commercially to be used in connection with headlamps on motor vehicles to enable them to comply with the provisions of section 13, subdivision (f), of the Motor Vehicle Act, which said device was purchased by the defendant in 1918 and attached to said headlamps by defendant, to wit, a diffusing type of lens, known as a 'Warner Lens,' which said type of device was, during the month of July, 1919, tested by the testing agency appointed by the superintendent of the motor vehicle department of the state of California, and reported to said superintendent by said testing agency as substantially complying with the requirements of section 13 of the California Motor Vehicle Act, when used with light bulbs of a specific candle-power prescribed by said testing agency, and adjusted at a specific angle designated by said testing agency; that *said defendant did then and there drive said automobile with said headlamps adjusted at an angle other than designated by said testing agency and equipped with said device and did then and there use said device with light bulbs exceeding in amount the candle-power prescribed by said testing agency, though not sufficiently great as to produce a dangerous glare.*"

[1] The two main purposes of the section are to compel the driver of an automobile to use thereon headlights which (a) shall cast in front of the automobile a light of sufficient power to enable him, when driving in the dark, to see objects in the road at a distance of two hundred feet ahead, and which (b)[l] shall not unduly dazzle the eyes of persons in front who may be looking toward him. The requirement of subdivision (g) that at an elevation above the level sur-

face equal to the elevation of the top of his lens and two hundred feet ahead, the light shall not be less than one thousand two hundred apparent candle-power is intended to meet the first-mentioned purpose. The requirements that at a point one hundred feet directly in front of the car the light shall not exceed two thousand four hundred apparent candle-power, and that at a point one hundred feet ahead, seven feet to the left and five feet above the surface, it shall not exceed eight hundred apparent candle-power, are intended to serve the last-mentioned purpose.

The meaning of the clause in subdivision (k) above quoted is not clear. The phrase "diffusing type of lense" is not defined in the act. To diffuse is to spread widely, to scatter, or disperse. Any lens not made of plain glass would to some extent diffuse the rays of light passing through it. [2] The phrase is apparently a trade name of recent origin. Its use has not as yet become sufficiently general to enable a court to take judicial notice of its trade meaning. The charge is that the defendant's headlight was of that type. [3] As a pleading this is sufficient and the meaning of the term would be a matter of proof at the trial. The question whether such a law is sufficiently certain to make the penalty valid is not here decided. [4] But whatever this phrase may mean, it is clear that under the provisions of this clause all lenses of the "diffusing type" must be submitted to the testing agency for approval and subjected to the same tests as to the maximum candle-power that are required for other types of lenses. It declares that the maximum candle-power of such lenses "shall be established by the testing agency . . . based upon tests as hereinabove provided" and that the device so tested shall have light bulbs "not exceeding that prescribed." This obviously refers to subdivisions (g), (h) and (j). It therefore means that such diffusing type of lens shall not throw a light which, at one hundred feet ahead and at a height of five feet from the level surface, shall exceed two thousand four hundred candle-power, or which, at said height and said distance ahead and seven feet to the left, shall exceed eight hundred candle-power, as provided in subdivision (g), and also that such device, if sold commercially, cannot be used by any person, unless it has been tested to ascertain this maximum, as provided in subdivision (h), and approved and certified, as

provided in subdivision (j). It also makes such lenses subject to another clause in subdivision (h), not above mentioned, which is as follows: "Provided, however, that if the test indicates that a device which is unacceptable with either of the test lamps will come within the specifications with lamps of another candle-power or of the other type, the device may be passed with corresponding limitations as to the incandescent lamps to be used in connection with it."

[5] The complaint shows a violation of the act. It charges that the Warner type of lens was sold commercially, was tested by the testing agency as provided in the act, and was by it reported as complying with section 13 "when used with light bulbs" of a stated candle-power, but that the defendant used Warner lenses with light bulbs exceeding the candle-power so limited. Warner lenses equipped with light bulbs of the candle-power used by the defendant may have been tested, but the complaint shows that they had not been approved or reported as permissible. The defendant is therefore, in effect, charged with using in connection with his headlight a "manufactured device that is sold commercially" which had not been first approved by the testing agency, or reported by said agency to the superintendent of the motor vehicle department as substantially complying with section 13 of the act, contrary to the provisions of subdivisions (h) and (j) above set forth. The fact that the headlights used did not produce a dangerous glare did not make it lawful for Hinkelman to use a headlight sold commercially that had not been tested and sanctioned by the testing agency as provided in subdivision (j). The complaint is therefore sufficient to justify the warrant upon which Hinkelman is detained in custody.

[6] We see no constitutional objection to the validity of these provisions. It may be true that the legislature has no power to delegate to the testing agency or to any other body the authority to make regulations in the nature of laws prescribing the quality of headlights which shall be used by persons driving automobiles. But the act itself, in subdivision (g), prescribes the qualities of headlights. The office of the testing agency is to furnish a means for the convenient determination of the question whether or not a given light does comply with the regulations laid down in the act. The legislature has provided that no such light shall be

used until the testing agency shall have ascertained and reported that it does comply with the law. Were it not for such provision for a testing agency no one could be reasonably certain that he is complying with the law and no officer of the state could be reasonably certain that the user was not complying with the law, without an elaborate test of the particular light in use. This would entail great expense and inconvenience both to the state in enforcing the law and to persons charged with a violation of it in establishing the defense that they had not violated it. In such cases it is proper for the state to establish an agency for the ascertainment of the facts with respect to any particular kind of headlight that is sold commercially and for general use.

The petitioner is remanded to the custody of the officer.

Angellotti, C. J., Wilbur, J., Lawlor, J., Olney, J., Sloane, J., and Lennon, J., concurred.