# Staunton.

## L. J. ADDINGTON, ET ALS. V. E. M. FULTON.

September 12, 1930.

Absent, Holt and Epes, JJ.

*H. E. Widener, A. C. Anderson, D. F. Kennedy* and *J. S. Ashworth,* for the appellants.

*R. P. Bruce* and *S. H. & Geo. C. Sutherland,* for the appellee.

GREGORY, J., delivered the opinion of the court.

The appellants are complaining of a decree entered in the trial court in which their cross bill was dismissed and their set-offs and counterclaims denied and refused, and in which the appellee's vendor's lien was established and directed to be enforced by a sale of a tract of 59.75 acres of land.

In 1920, E. M. Fulton, the appellee, was the owner of 59.75 acres of land adjoining the town of Norton. This tract was composed of the "Gilliam tract" of 49.75 acres and a portion of the "Wells Commissioner" tract of about 10 acres. He granted the appellants an option to purchase the 59.75 acres, which contained this reservation: "But subject to the easement of roads and streets" \* \* \*. Later, the parties exercised their right under the option and the transaction was closed by the execution and delivery of a deed, made on August 28, 1920, conveying the property to the appellants. The purchase price was $11,950.00, payable as follows: $7,500.00 cash, and the residue payable in equal annual installments of $1,112.50 each, with interest. The deferred payments were evidenced by negotiable notes and were secured in the deed by a vendor's lien which was expressly retained for that purpose. The deed contained covenants of general warranty, but did not contain the usual Virginia statutory covenants. It also contained this restriction: "But this conveyance is subject to all easement rights in said street, avenue and road." The tract was described particularly by metes and bounds and in both the option and the deed reference was made to the deed book and page where a plat was spread and recorded in the clerk's office under the Virginia statute which provides how one may dedicate streets and alleys and the layout or plat may be recorded.

Only $495.00 was paid on the indebtedness and this amount was applied as a credit on the first note. All of the notes being long past due, Fulton, 'the appellee, filed

his bill seeking to enforce his vendor's lien by a sale of the property and he also asked for a deficiency judgment in the event the proceeds of the land failed to satisfy the debt. In the meantime a number of judgments were recovered and docketed against the appellants. The appellants filed an answer and cross bill, admitting the sale and the vendor's lien, but denied that they owed the appellee the amount claimed. They set up claims for damages against the appellee and sought to recover these damages under principles relating to recoupment, set-off and counterclaim. They did not ask for a rescission. They charged Fulton with concealing the fact that an avenue extended far into the property and claimed damages for the land occupied by the avenue. They claimed that he failed to deliver to them four small parcels of land, aggregating 4.31 acres, which was to have been included in the conveyance to them, and by reason of this they claimed that they were entitled to damages of $2,150.00. It is also claimed by them that they did not know that the tract had been subdivided and streets and alleys had been dedicated on the tract, and for this item they claim damages of $3,000.00. Another claim made in the cross bill is that at the time of the sale they had an oral contract with Fulton, whereby it was agreed that the land could be sold off in lots and he would release the lots so sold from his vendor's lien upon the payment to him of the proceeds of the sale, and that he refused to comply with this agreement. And still another claim is that Fulton agreed to obtain a charter for a coal corporation to take over the land and he was paid $50.00 for this service but he failed to obtain the charter.

All of these various claims and contentions were denied by Fulton in his answer to the cross bill and the cause was finally heard on the pleadings and evidence and the trial court decided adversely to every claim and contention of the appellants, and, among other things, dismissed the

cross bill and ordered the land sold to satisfy the vendor's lien. A decree was entered carrying the decision into effect and allowing a $25.00 credit on the charge made by Fulton for obtaining the charter and an abatement in the purchase price for .30 of an acre. There was an error in the computation of the .30 of an acre. At the rate of $200.00 per acre, it is apparent that the amount should have in fact been computed to be $60.00 instead of $120.00.

The land contained valuable coal and was mined by the appellants when the price of coal was from $12.00 to $17.00 per ton, but when the price of coal descended they discontinued their mining operations and then attempted, in 1924, to dispose of the property through an auction lot sale, but owing to complications unnecessary to mention failed to dispose of the property in this way.

The appellee went over the land with the appellants before the purchase and they claim that the streets and alleys were not pointed out to them while appellee contends that he pointed out these things and informed them of all the facts about the dedication.

The record presented is obscure. It was prepared in such a manner that it is difficult to ascertain just what the appellants are relying on for a reversal of the decree. Reviewing the record studiously and as a whole, it appears, behind all of the various and numerous claims asserted by the appellants, that there are just three main and decisive questions.

First: Was there an oral agreement to release the lots, as they were sold, and if so, did Fulton violate it?

Second: Did the appellants, under their deed, receive title to all of the land which they bought, consisting of 59.75 acres?

Third: Did the appellants know, at the time of the sale to them, that within the boundary streets and alleys had been dedicated?

■ It is not necessary to pass upon the question of whether the appellants had the right to set up counter-claims and set-offs in this suit, nor is it necessary to pass upon the many claims for damages which have been asserted, because there is no evidence in the record which is sufficient to sustain any of their claims under their counterclaims and set-offs. Nor is there sufficient evidence to sustain any of their claims for damages.

■ The appellants claim that Fulton agreed orally with them at the time of the sale that he would release his vendor's lien as to any lots sold by them, provided they would turn over to him the proceeds of such sales.

The evidence discloses that this tract of land was bought in 1920 for mining purposes and when coal mining was a very profitable business, and that the tract contained very valuable coal deposits. It is further shown that not until 1924 did the appellants make any efforts to sell any lots and at that time numerous liens for taxes and judgments had attached to the land. It is not satisfactorily explained how, even if Fulton had released his vendor's lien, the appellants could have delivered good title to any of the lots to any prospective purchaser. The existence of these liens was in no way brought about directly or indirectly by Fulton and he had no power or control over them. At least one lot was sold by the appellants and they never offered to turn the purchase price over to the appellee, but kept it for their own use. They voluntarily executed a deed of trust on the entire tract in 1922, to secure a loan of $4,000.00, which was inconsistent with any thought of selling the tract off in lots.

The testimony fails to establish an oral agreement with any degree of certainty or definiteness. There is an entire failure to prove the terms of the agreement such as when and how Fulton was to make the release of his lien. It fails to show that he was ever requested to make any releases to any purchasers for any of the lots.

The appellants' own evidence fails to establish any such agreement and when their evidence is coupled with their inconsistent conduct, their failure in requesting releases; their executing a deed of trust on the tract; suffering judgment liens to attach and their failure to turn over to the appellee the purchase price of the lot sold, it conclusively convinces us that there was no such oral agreement as claimed. If there was such an agreement, the appellants violated and abandoned it.

From the testimony it is clearly shown that there was only a .30 acre shortage in the tract and for this the trial court allowed an abatement in the purchase price of $120.00, which of course is incorrect because .30 of an acre at $200.00 per acre would only amount to $60.00. The finding of this small shortage was the result of a recent survey made by a reputable engineer in which one of the appellants, who was a civil engineer of long experience, actively took part. It therefore appears that the apellants are entitled to an abatement in the purchase price of $60.00.

On the 16th day of December, 1899, in conformity with a legislative act, the appellee, Fulton, the owner of the tract, caused to be spread and recorded a plat on which was laid out certain streets and alleys, showing the subdivision into blocks, lots, streets and alleys and giving the dimensions and courses of the streets and alleys. At the time of the sale to the appellants this plat was on record and particularly referred to in their deed as well as the option. In addition to this, the option and the deed contained a provision expressly excepting from the conveyance all easements for streets and alleys.

By deed of trust of February 10, 1922, the appellants, in order to obtain a loan for $4,000.00 from the bank at Coeburn, conveyed the tract in question and in that conveyance they expressly recognized the plat and the dedication of the streets and alleys. This language is used in the

description: "As shown on map dedicated by E. M. Fulton and wife and designated as map to the North Addition of the town of Wise and recorded in the clerk's office for Wise county in deed book 50, page 487."

In addition to these things Fulton testifies that he went over the land with the appellants and informed them of the existence of the streets and alleys. From all of this convincing evidence, it is conclusive that the appellants bought with full knowledge of the easements.

The streets and alleys were in existence only on the map. They had never been opened nor accepted by the public. No person has ever attempted to have them opened and no one has proceeded to evict the appellants of any of the land which they bought. It must be born in mind that the conveyance was made with general warranty alone. There were no covenants of seisin or against encumbrances. The only covenant available to the appellants was a general warranty and under that covenant no liability can accrue until there has been an eviction, and up to this time there has been no eviction nor attempted eviction. Minor on Real Property (2nd ed.) section 1055; *Beale* v. *Seiveley*, 8 Leigh (35 Va.) 658.

Appellants claimed that Fulton failed to disclose to them the existence of the streets and alleys and that they were deceived and misled to their injury. We have searched the record and found no substantiation of this charge. The only defect shown in the title was the small shortage of .30 of an acre above referred to, which was properly established and taken care of.

The fraud which will entitle a vendee to relief must consist in some misrepresentation of fact, or in the intentional concealment or suppression of some fact and the vendee must be ignorant of it, before he is entitled to relief. Of course the fact misrepresented, concealed or suppressed must be material. *Beale* v. *Seiveley* 8 Leigh (35 Va.) 658.

■ A significant circumstance which points to the correctness of the decree complained of is the fact that the appellants have had the use and occupancy of the land since August, 1920. They have removed quantities of coal from it through their mining operations and through all of the years that the property has remained in their possession, with knowledge of their rights, they failed to assert any of their claims, until this suit was brought to collect from them the long overdue payments of the purchase price, lawfully due the appellee.

The delayed assertion of their claims, which are supported by little or no evidence, at this late day will not be permitted to destroy or impair the appellee's valid vendor's lien. The property has substantially depreciated in value since they bought it. It, at this time, is worth considerably less than their agreed purchase price and their coal mining ventures have become unprofitable, yet none of these things are sufficient to defeat the appellee in the enforcement of his vendor's lien. Under the law they are bound to carry through their solemn obligation, which they agreed to perform in the deed and for the performance of which the appellee retained his vendor's lien.

■ This cause was submitted to the trial court with the result that a decree was entered against the appellants, on all of their contentions. The burden was on the appellants, in this court, to show clearly the errors in the decree. *Kiser* v. *Hannah*, 148 Va. 594, 139 S. E. 279. This they have utterly failed to do.

The decree is plainly right and with the exception of the error in the computation of the shortage of .30 of an acre, we affirm it.

*Amended and affirmed.*