Williams, J.
 

 The first contention made by the appellant is that the trial court should have directed a verdict in its behalf upon the authority of
 
 Skinner
 
 v.
 
 Penna. Rd. Co.,
 
 127 Ohio St., 69, 186 N. E., 722;
 
 Gumley, Admr.,
 
 v.
 
 Cowman,
 
 129 Ohio St., 36, 193 N. E., 627; and
 
 Watt
 
 v.
 
 Jefferson Trucking Co.,
 
 130 Ohio St., 99, 196 N. E., 887.
 

 Appellant contends that this court should hold as a matter of law that the plaintiff was driving his truck at a greater speed than would “permit him to bring it to a stop within the assured clear distance ahead,” in violation of Section 12603, General Code, and was thereby guilty of contributory negligence. If plaintiff was so guilty it would be a bar to his recovery as he was the sole beneficiary of. his wife under the wrongful death statute.
 
 Cleveland, C., C. & St. L. Ry. Co.
 
 v.
 
 Grambo, Sr., Admr.,
 
 103 Ohio St., 471, 134 N. E., 648.
 

 Plaintiff testified on the trial that he was driving east on Mentor avenue at the rate of thirty miles per hour, with his left front wheels about one foot south of the center of the street; that his bright headlights illuminated the road about 250 feet ahead and lighted it up from the center to the south curb; that he was
 
 *275
 
 following, sixty feet behind another eastbound car; that two westbound automobiles approached him, driving midway between the center and north curb of the roadway; that after the eastbound car had passed these two automobiles, the rear westbound automobile drove out of line and two or three feet over onto the plaintiff’s side of the roadway; that at this time the plaintiff was about 20 to 25' feet from this westbound automobile ; that he was obliged to turn suddenly and unexpectedly to the right to avoid a head-on collision with this car; that at the speed he was traveling it would require 25 to 30 feet to stop; that he could not stop before hitting the rear end of the defendant’s truck; and that the lights of the oncoming cars in no way interfered with his view to the east along his side of the road.
 

 The plaintiff’s claim of negligence was that there were no lights burning on defendant’s truck and no flares were placed on the road. There was evidence tending to prove that the place of the accident was lighted to some extent by street lights and that the lights of the westbound cars illuminated the street to some extent. There was testimony to the effect that the night was dry and clear.
 

 The rule applicable to this contention is laid down in the third paragraph of the syllabus in the case of
 
 Kormos
 
 v.
 
 Cleveland Retail Credit Men’s Co.,
 
 131 Ohio St., 471, 3 N. E. (2d), 427, which reads as follows:
 

 “An operator who has failed to comply with the ‘assured clear distance’ statute may excuse such failure and avoid the legal imputation of negligence
 
 per se
 
 by establishing that, without his fault, and because of circumstances over which he had no control, compliance with the law was rendered impossible.”
 

 The plaintiff was confronted with an emergency by the swerving of the oncoming automobile into his path. There' is evidence tending to show that, without his
 
 *276
 
 fault and by the unforeseeable action of another, he was forced to turn to his right and into the parked truck, which according to plaintiff’s testimony was at the time unlighted.
 

 In the state of evidence shown >by the record the questions whether plaintiff was guilty of negligence in violating the statute and whether such negligence, if it existed, directly contributed to produce his wife’s injuries, were for the determination of the jury under proper instructions of the court.
 

 A second contention is that the trial court committed prejudicial error in charging the jury that a violation of a certain rule or regulation of the Public Utilities Commission requiring that trucks stopped on the highway at night must be protected by red lights or flares constituted negligence
 
 per se.
 

 The regulation is as follows:
 

 “Every truck or truck train shall be provided with green marker lights visible from the front, and red marker lights visible from the rear in addition to the regularly used lights. Each truck and each trailer must have a green light near the front, and a red light near the rear, both on the left side, to definitely indicate the outline of the vehicle.
 

 “Every motor vehicle shall be provided with good and sufficient brakes, tires, and the usual essential mechanical parts, and in addition:
 

 “1. Two red flags and two red fusees or red flashlights for use in emergency stops.
 

 “No truck shall be stopped within the traveled portion of the highway except as allowed by law. If for any reason it is stopped on the highway in the night season, the driver must immediately ascertain that the rear red lights are properly lighted and protect the rear of the truck by the use. of red flashlights or fusees.” (Administrative Order 114, Section III, Public Utilities Commission of Ohio.)
 

 
 *277
 
 Section 614-85, General Code, provides that no motor transportation company shall operate any motor propelled vehicle for the transportation of persons or property for hire on any public highway in this state except in accordance with the provisions of this chapter.
 

 Section 614-86, General Code, provides:
 

 “The public utilities commission of the state of Ohio is hereby vested with power and authority to supervise and regulate each such motor transportation company in this state; * * . *
 
 to regulate the service and safety of operation of each such motor transportation company; to prescribe safety regulations,
 
 and designate stops for service and safety on established routes; * * * The commission, in the exercise of the jurisdiction conferred upon it by this chapter, shall have the power and authority to prescribe rules and regulations affecting such motor transportation companies, notwithstanding the provisions of any ordinance, resolution, license or permit enacted, adopted or granted by any incorporated city or village, city and county * * (Italics ours.)
 

 Section 614-87, General Code, provides:
 

 “No motor transportation company shall commence its operation as such in this state, without first obtaining from the public utilities commission a certificate declaring that public convenience and necessity require such operation.
 

 “The commission * * * may attach to the exercise of the rights granted by such certificates, such terms and conditions as', in its judgment, the public convenience and necessity may require. * * ”
 

 This section also provides that the commission may for good cause and upon at least fifteen days notice to the holder of any certificate, and an opportunity to be beard, revoke such a certificate.
 

 Section 614-100, General Code, makes a violation of
 
 *278
 
 a valid and subsistent rule or regulation of the Public Utilities Commission a misdemeanor.
 

 Such a certificate constitutes neither a franchise nor a contract, confers no property right and is a mere revocable license.
 
 Sylvania Busses, Inc.,
 
 v.
 
 City of Toledo,
 
 118 Ohio St., 187, 196, 160 N. E., 674;
 
 Penna, Rd. Co.
 
 v.
 
 Pub. Util. Comm.,
 
 116 Ohio St., 80, 155 N. E., 694;
 
 Scheible, Mayor,
 
 v.
 
 Hogan,
 
 113 Ohio St., 83, 148 N. E., 581;
 
 Estabrook, Recr.,
 
 v.
 
 Pub. Util. Comm.,
 
 112 Ohio St., 417, 147 N. E., 761;
 
 Westhoven
 
 v.
 
 Pub. Util. Comm.,
 
 112 Ohio St., 411, 147 N. E., 759.
 

 Such a license is subject to such terms and conditions as the commission in its judgment may impose in issuing a certificate of public convenience and necessity. Regulations with reference to safetynre made to apply only to certificated motor transportation companies under Section '614-86, General Code, and are intended to give control over safety of operation. While the commission grants the certificate subject to conditions which it may impose, a rule or regulation would not be binding unless it is within the power of the commission to adopt it. In other words, there is nothing in these statutory provisions which limits or restricts the general power to adopt safety rules applicable to motor transportation- companies. It is therefore necessary to inquire whether such a grant of unlimited and unrestricted authority vests legislative power in the commission.
 

 By way of preliminary inquiry, certain fundamental conceptions as to legislative power in vesting discretion in public officials should be emphasized. It has been generally held that a legislative body in conferring such power should lay down definite rules of guidance in restricting or limiting the exercise of such official action; but an exception to the rule is recognized in certain cases where the establishment of such criteria would be impossible or impracticable, or
 
 *279
 
 would result in rendering the enforcement of a police regulation nugatory or ineffective. An amplitude of authority on this subject may be found in the annotations in 92 A. L. R., 400; 54 A. L. R., 1104, and 12 A. L. R., 1435. Some of the cases therein referred to turn on an inquiry as to whether arbitrary, indiscriminate and unreasonable power is conferred in denial of equal protection of the law or due process; in most of them, however, the question of delegation of legislative power is considered controlling.
 

 It is an accepted doctrine in our constitutional law that the law-making prerogative is a sovereign power conferred by the people upon the legislative branch of the government, in a state or the nation, and cannot be delegated to other officers, board or commission, or branch of government. Thus neither the Congress of the United States nor the General Assembly of Ohio can delegate its legislative power, but may confer administrative power on an executive, a board or commission.
 

 Significant language is found in
 
 Panama Refining Co.
 
 v.
 
 Ryan,
 
 293 U. S., 388, 79 L. Ed., 446, 55 S. Ct., 241, commonly called the “Hot Oil Case”:
 

 “The Congress manifestly is not permitted to abdicate', or to transfer to others, the essential legislative functions with which it is thus vested.' Undoubtedly legislation must often be adapted to complex conditions involving a host of details with which the national legislature cannot deal directly. The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. Without capacity to give
 
 *280
 
 authorizations of that sort we should have the anomaly of a legislative power which in many circumstances calling for its exertion would be but a futility. But the constant recognition of the necessity and validity of such provisions, and the wide range of administrative authority which has been developed by means of them, cannot be allowed to obscure the limitations of the authority to delegate, if our constitutional system is to be maintained.”
 

 Instructive discussions may be found in
 
 A. L. A. Schechter Poultry Corp.
 
 v.
 
 United States,
 
 295 U. S., 495, 79 L. Ed., 1570, 55 S. Ct., 837, and
 
 Field
 
 v.
 
 Clark,
 
 143 U. S., 649, 36 L. Ed., 294, 12 S. Ct., 495.
 

 case cerned with the power of the Legislature to confer upon the Public Utilities Commission the authority to make safety rules with reference to traffic on the highways. Authorities bearing specifically on this question are collected in annotations in 87 A. L. R., 546, and 79 L. Ed., 519.
 

 It is the general rule that in order to confer the power to make rules and regulations upon a commission, the Legislature must establish the policy of the law by adopting standards as has been heretofore stated with reference to conferring official discretion. The discretion conferred must not be “unconfined and vagrant” and must be “canalized within banks that keep it from overflowing.” (Mr. Justice Cardozo in
 
 Panama Refining Co.
 
 v.
 
 Ryan, supra.)
 

 If such general rule-making power could be conferred indiscriminately, the Legislature could meet, create commissions, pass on to them the duties of legislation and then adjourn,
 
 sine die.
 
 Without restrictions on the commission’s power, rules and regulations of whatever kind could be adopted by it without notice,' and changed overnight. The result would be that statutory law would lose its significance and legal rights would be grounded in great measure upon the readily
 
 *281
 
 .alterable rules and regulations of boards and commissions. Thus the constitutional right of referendum would be denied, government would be given over to the despotic rule of administrative authorities and bureaucracy would run wild.' .A pertinent discussion of this phase of the problem may be found in
 
 Goodlove
 
 v.
 
 Logan,
 
 217 Ia., 98, 251 N. W., 39.
 

 Exceptions to this rule have been made from time to time and reasons therefor often exist. In
 
 Thompson
 
 v.
 
 Smith,
 
 155 Va., 37, 154 S. E., 579, 71 A. L. R, 604, there is an interesting and instructive discussion of the problem. There are many instances where it is impossible or impracticable to lay down criteria or standards without destroying the flexibility necessary to enable the administrative officers to carry out the legislative
 
 will;
 
 especially may such a contingency arise when the discretion conferred relates to police regulations. In such cases it has been held unnecessary to declare the policy of the law by establishing definite restrictions. See Section III, paragraph
 
 a,
 
 of the annotation in 92 A. L. R, 410, in which the cases are collected. Exceptions of this character should be made with discrimination and foresight, and only in cases where absolutely necessary to accomplish the legislative objective.
 

 Does the instant case come within the exception? In other words, are standards necessary in the instant case?
 

 The beginnings of bureaucracy in this state trace back to its early history. In
 
 France
 
 v.
 
 State,
 
 57 Ohio St., 1, 47 N. E., 1041, Williams, J., states in the opinion at page 18: “But in numerous instances, from an early period in the history of the state, the Legislature has invested various boards, bodies, and officers with the power, and charged them with the duty, of ascertaining facts, and hearing and deciding questions, when deemed necessary or expedient in order to carry
 
 *282
 
 into execution laws enacted to accomplish, some public need or purpose, or deemed for the public good.”
 

 • In recent years administrative boards have multiplied by leaps and bounds until” today there are in Ohio twenty-eight or more state boards or bodies to which the Legislature has granted the power to make rules and regulations.
 

 An examination of empowering statutes reveals that many of these boards could not function effectively without the rule-making prerogative. There are a number of cases in this jurisdiction that discuss delegation of power and they emphasize the principle that, if the authority conferred is administrative, constitutional limitations are not transgressed.
 

 In
 
 Cincinnati, Wilmington & Zanesville Rd. Co.
 
 v.
 
 Commrs. of Clinton County,
 
 1 Ohio St., 77, 88, Ranney, . J., in the opinion lays down this test:
 

 “The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.”
 

 In
 
 Yee Bow
 
 v.
 
 City of
 
 Cleveland, 99 Ohio St., 269, 273, 124 N. E., 132, 12 A. L. R., 1424, Jones, J/, discusses the principle in this language:
 

 “It is now generally held that g«cm-judicial duties and administrative functions may be imposed upon administrative officers ior the purpose of ascertaining the conditions under which the law or ordinance becomes effective. It will not be presumed that the action of the administrative officer will be either arbitrary or unwarranted. Should it so prove to be, the aggrieved pers'on would have the right to relief through the courts. But it is said that the,ordinance has fixed no standard for official guidance, but has left the sani
 
 *283
 
 tary arrangements and ventilation of each public laundry to the untrammeled judgment of the health commissioner for determination.whether such are
 
 sufficient
 
 and
 
 adequate.
 
 It is exceedingly doubtful whether a fixed standard could bé adopted by the city in its regulation of those features. What would prove to be sufficient and adequate in one public laundry might be entirely insufficient and inadequate in another. And any attempt to provide by law for the multitudinous details defining what would be sufficient and adequate measures of regulation, applicable to each and every laundry falling within the class mentioned, would seriously tax legislative ingenuity. But it is now generally held that discretionary powers may be lodged in administrative officers to determine whether the terms of a law or ordinance of this-character have been complied with, and that such ‘terms like other general terms get precision from the sense and experience of men.’ ” Although in that case the inquiry related to the right of the legislative body of a municipality to delegate power, the principle is the same.
 

 In
 
 Green
 
 v.
 
 State Civil Service Comm.,
 
 90 Ohio St., 252, 107 N. E., 531, it was held that the civil service law authorizing the civil service commission to prescribe, amend and enforce rules with reference to the civil service of the state did not constitute a delegation of legislative power. The opinion by Johnson, J., recites:
 

 “In the nature of things there must be many things on which the wisdom of legislation must depend, which can only properly be determined in the course of the administration of the legislative will as expressed in law. The.statute in question provides for appointments and promotions in the civil service according to merit and fitness. It also provides for competitive examinations of applicants and that the commission may adopt rules to carry the provisions of the law into
 
 *284
 
 effect. There is in this no delegation of legislative power, but it is the imposition of an administrative duty in order to give practical effect to the enactment. The legislative power to prescribe this duty was exercised by the General Assembly itself in keeping with constitutional requirement.”
 

 In
 
 Company, ex parte,
 
 106 Ohio St., 50, 58, 139 N. E., 204, a sanitary code for the state framed by the public health council under a general and unrestricted grant was upheld. In the opinion Clark, J., uses this language :
 

 ‘ ‘ That the Legislature in the exercise of its constitutional authority may lawfully confer on boards of health the power to enact sanitary ordinances having the force of law within the districts over which their jurisdiction extends, is not an open question. This power has been repeatedly recognized and affirmed.”
 

 This court has previously recognized that the Public Utilities Commission is authorized to make rules and regulations designed for the safety of the traveling public and has asserted that a violation of them warrants a revocation of the certificate of the offending company by the commission.
 
 Midwestern Motor Transit, Inc.,
 
 v.
 
 Pub. Util. Comm.,
 
 126. Ohio St., 317, 321, 185 N. E., 194;
 
 Minerva-Canton Transit Co.
 
 v.
 
 Pub. Util. Comm.,
 
 118 Ohio St., 561, 564, 162 N. E., 34;
 
 Solt
 
 v.
 
 Pub. Util. Comm.,
 
 114 Ohio St., 283, 286, 150 N. E., 28. In each of these cases Matthias, J., wrote the opinion. Although the question of delegation of power was not presented in any of these, significant language is used:
 

 “Not only the provisions of law, but the’rules and regulations of the commission authorized by statute, which are designed for the safety of the traveling public, should be rigidly enforced by the commission.”
 
 Midwestern Motor Transit, Inc.,
 
 v.
 
 Pub. Util. Comm., supra.
 

 
 *285
 
 ‘ ‘ The provisions of law as well as the regulations of the commission designed for the safety of the traveling public should be enforced by the commission. It is well that motor transportation companies understand that compliance with such laws and regulations will be required and enforced.”
 
 Minerva-Cant on Transit Co.
 
 v.
 
 Pub. Util. Comm., supra.
 

 “Pursuant to the authority conferred by Section 614-86, General Code, the Public Utilities Commission of the state has adopted and published certain safety regulations, which include a requirement that all motor vehicles used in the transportation of passengers .shall be equipped with a standard speedometer maintained in good working order, with good and sufficient brakes, with a suitable horn or other signal, and with an extra tire. * * *
 

 “In our opinion the Public Utilities Commission, upon reaching a conclusion from evidence adduced before it upon hearing that the holder of a certificate issued by it violates the rules prescribed by the commission for the purpose of safeguarding the traveling public, and that he continues such violation for such a protracted period as to indicate neglect, is fully authorized to revoke the certificate of convenience and necessity theretofore issued by it.”
 
 Solt
 
 v.
 
 Pub. Util. Comm., supra.
 

 In
 
 Sylvania Busses, Inc.,
 
 v.
 
 City of Toledo,
 
 118 Ohio St., 187, 160 N. E., 674, Section 614-86, General Code, was held valid and constitutional, but the contention that parts of it were invalid as constituting a delegation of legislative power to the commission was not made or considered.
 

 Rules and regulations of administrative boards never have the full effect of law, but have legal effect only in the sense that they have enforceability, for legislation can be enacted only by the General Assembly. Sc
 
 humer
 
 v.
 
 Caplin,
 
 241 N. Y., 346, 150 N. E., 139. Yet without rule-making power many of the boards
 
 *286
 
 and commissions would be impotent and could not achieve the ends for which they were created. Motor transportation companies are utilities operating on the public highways for commercial profit, and regulation is imperative if highway safety is to be attained. The Legislature is not always in session and so cannot, acting by itself, promptly meet the ever-changing problems arising out of the regulation of service, the control of equipment and the promotion of safety. Recent years have shown how quickly unforeseen dangers on the highways may arise through upheaval by frost and washout by rain and flood. Shifting conditions require new methods in dealing with service, equipment and safety problems. It may well be assumed that the legislative intent in providing that the required license is to be granted subject to such conditions (which include proper rules and regulations whether adopted before or after the certificate of public convenience and necessity is obtained) as the commission may impose was to enable the commission through such regulatory power to avert new perils and meet emergencies; but it is essential to the validity of such rules and regulations that they be reasonable and neither arbitrary nor discriminatory nor in conflict with the law. The necessities are such that the instant case comes within the exception, and the power conferred on the Public Utilities Commission is administrative and not legislative. Standards restricting the commission and directing its action are impracticable under the circumstances.
 

 However, it must be borne in mind that the fact that utilities are involved is a vital consideration. If this court had under consideration the question of regulating the use of the highways by the general public through the instrumentality of a commission a different conclusion might be reached. The determination of that question is deferred until it arises.
 

 A searching investigation has failed to reveal very
 
 *287
 
 many authorities bearing on the precise question presented.
 
 State
 
 v.
 
 Dixon,
 
 335 Mo., 478, 73 S. W. (2d), 385, supports the conclusions reached by this court.
 

 In a number of other cases the conferring of similar regulatory power has been upheld but in all of them there were some restrictions or limitations.
 
 Ashland Transfer Co.
 
 v.
 
 State Tax Commission,
 
 247 Ky., 144, 56 S. W. (2d), 691, 87 A. L. R., 534;
 
 Hamann v. Lawrence,
 
 364 Ill., 197, 188 N. E., 333;
 
 Snyder
 
 v.
 
 State,
 
 206 Ind., 202, 188 N. E., 777;
 
 Sproles v. Binford,
 
 286 U. S., 374, 76 L. Ed., 1167, 52 S. Ct., 581;
 
 In re Hinkelman,
 
 183 Cal., 392, 191 P., 682, 11 A. L. R., 1222;
 
 State v. Wetzel,
 
 208 Wis., 603, 243 N. W., 768, 86 A. L. R., 274.
 

 In
 
 Goodlove
 
 v.
 
 Logan,
 
 217 Ia., 98, 251 N. W., 39, it was held that such action constituted a delegation of legislative power; but the regulation of the commission in that case applied to the public generally and to all vehicles' on the highway, and the alleged violator was operating his own passenger automobile on a public road in the usual way and not for hire. It is therefore distinguishable from the instant case.
 

 It does not follow that a violation of the regulation constitutes negligence
 
 per se.
 
 Assuredly, a violation after the regulation has become effective and notice of its adoption has' been given to the motor transportation company, warrants revocation of the license or prosecution for a misdemeanor under Section 614-100, General Code, as heretofore indicated; that section, however, is not a measure enacted for the public safety, but to secure the observance of orders, rules and regulations of the commission and of certain statutes and therefore a violation of Section 614-100 does not constitute negligence
 
 per se
 
 under the doctrine pronounced in
 
 Schell
 
 v.
 
 DuBois,
 
 94 Ohio St., 93, 113 N. E., 664, L. R. A., 1917A, 710. The regulation as to fusees or flares was, however, admissible in evidence as bearing on the question of negligence in the sense of want
 
 *288
 
 of ordinary care. The trial court, therefore, would have been warranted in submitting that question to the jury, but committed prejudicial error in charging the doctrine of negligence
 
 per se. Schumer
 
 v.
 
 Caplin, supra.
 

 The third contention is that the negligence of the defendant in failing to light its' parked truck and to put out red flashlights or fusees to protect the rear could not be, as a matter of law, the proximate cause of the collision.
 

 Appellant 'contends that the plaintiff swerved suddenly to the right to avoid a head-on collision with an oncoming automobile and in so doing he did not have sufficient distance within which to stop his truck before crashing into the rear end of appellant’s truck and that he would have hit the rear end of appellant’s truck even if it had been properly lighted.
 

 It is contended by the appellee that had it not been for the negligence of the defendant in leaving its truck unlighted and without flares or fusees guarding the rear, the plaintiff would have been aware of the presence of that impediment on the roadway and could have so adjusted his speed as not to have permitted himself to become placed in a position where the negligent encroachment of the westbound car could have forced him into the obstruction; and that, had plaintiff known of the precise position and location of the defendant’s truck along the curb, it would not have been necessary for him to have veered as sharply to the right or to have traveled as far to the right as he did in order to avert the collision with the oncoming car. The plaintiff further maintains that it would have been necessary for him to swerve onbf three or four feet to the right and in that way he could have missed striking either the defendant’s truck or the oncoming car, but that since that truck whs unlighted and plaintiff was wholly unaware of its presence and had the right to assume that the other lane of traffic was free
 
 *289
 
 and unobstructed, he was justified in allowing himself a greater margin of safety in turning aside from the path of the oncoming ear.
 

 The facts were such as to give rise to conflicting in-
 
 (
 
 ferenees; therefore proximate cause was a mixed ques-'! tion of fact and law, and was properly submitted to the. jury.
 

 Since prejudicial error was committed by the trial court in charging the law as to negligence
 
 per se
 
 as heretofore stated, the judgments of the courts below will be reversed and the cause remanded for a new trial.
 

 Judgments reversed and cause remanded.
 

 Weygandt, C. J., Jones, Matthias, Day and Zimmerman, JJ., concur.
 

 Myers, J., not participating.